465 A.2d 1032

Thomas E. MYERS

v.

COMMERCIAL UNION ASSURANCE COMPANIES, Nicel Industries, Inc., the Travelers Insurance Companies, Bradley A. Miller, and the City of McKeesport.

Appeal of COMMERCIAL UNION ASSURANCE COMPANIES and Nicel Industries, Inc. (No. 205)

Appeal of TRAVELERS INSURANCE COMPANIES (No. 114)

The TRAVELERS INSURANCE COMPANIES, Appellant,

v.

COMMERCIAL UNION ASSURANCE COMPANIES.

Superior Court of Pennsylvania.

Argued Nov. 9, 1982.

Filed Sept. 9, 1983.

Petition for Allowance of Appeal Granted & Denied Jan. 19, 1984.

22

William K. Herrington, Pittsburgh, for appellant (at Nos. 114 and 115) and appellee (at No. 205).

Jeffrey S. Weiss, Pittsburgh, for Myers, appellee (at Nos. 114 & 205).

Fred C. Trenor, Louis C. Long, Pittsburgh, for appellant (at No. 205) and for appellee (at Nos. 114 and 115).

Before CAVANAUGH, ROWLEY and MONTGOMERY, JJ.

CAVANAUGH, Judge:

This appeal involves declaratory judgment proceedings and an equity action which were consolidated in the court below and heard as a case stated.[1] Thomas E. Myers is an Illinois resident who was seriously injured in a motor vehicle accident in McKeesport, Allegheny County, Pennsylvania, on December 7, 1978. The vehicle in which Mr. Myers was a passenger was operated by Bradley A. Miller. Myers was a carpenter who had been sent to Munhall, Pennsylvania, by his employer, Nicel Industries, Inc., to supervise the installation of chalk boards at the Steel Valley High School. On the day of the accident, he worked at the job site and

---

1. In the court below, Thomas Myers filed a declaratory judgment action against Commercial Union Assurance Companies, Nicel Industries, Inc., The Travelers Insurance Companies, Bradley A. Miller and the City of McKeesport at GD 80–02731 in the Court of Common Pleas of Allegheny County. Subsequently, Travelers Insurance Companies filed a complaint in equity against Commercial Union Assurance Companies at GD 80–8732 in the Court of Common Pleas of Allegheny County. Both actions were consolidated in the court below. The action against the City of McKeesport is still pending.

then left with another carpenter, Bradley A. Miller, who drove Myers to various car rental agencies in an attempt to rent a car for Myers. It was while engaged in this activity that the vehicle being operated by Miller collided with a pole. As a result of the accident, Myers sustained permanent damage to his spinal cord resulting in paralysis.

Mr. Myers sought workmen's compensation benefits in Illinois where he was employed and ultimately received an award which is being paid by the Commercial Union Assurance Companies, the workmen's compensation carrier for Nicel Industries. Travelers Insurance Companies was the insurer on the automobile insurance policy issued to Mr. Miller and that company paid almost $75,000 for medical bills under the basic loss provisions of the Pennsylvania No-Fault Act. Travelers Insurance Companies also paid $250,000 in settlement of a claim which Mr. Myers made against Mr. Miller for his non economic loss.

Mr. Myers' petition for declaratory judgment sought an adjudication of the rights of the various parties in the controversy, namely Thomas E. Myers, Commercial Union Assurance Companies, Nicel Industries, Inc., The Travelers Insurance Companies, Bradley A. Miller and the City of McKeesport. Subsequently, Travelers Insurance Companies, as the no-fault carrier, filed a complaint in equity seeking reimbursement from the workmen's compensation carrier, Commercial Union, of $81,587.29 consisting of its payments to Mr. Myers for medical expenses and work loss benefits. Commercial Union sought subrogation of the workmen's compensation benefits it paid from the settlement that Myers received from Travelers Insurance for non economic loss. The court below dismissed the claims of both insurance carriers. The appeals do not involve an adjudication of any rights of Mr. Myers against the City of McKeesport as that action is still pending.

Commercial Union, to the extent of workmen's compensation benefits paid to Myers, seeks subrogation from Myers' settlement with Travelers for non economic loss. The answer to this complex question depends on

whether we apply Pennsylvania's No-fault Motor Vehicle Insurance Act, Act of July 19, 1974 P.L. 489, No. 176, 40 P.S. § 1009.101 et seq. or the law of Illinois which does not have a no-fault act. In a more simplistic legal era, the law of the place where the accident occurred would prevail. Today, in determining what law applies in a conflict of law situation we are governed by *Griffith v. United Airlines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964). That case abandoned the strict *lex loci delicti* rule which had been the law in Pennsylvania. Under *Griffith* the law of the state which has the most significant relationship with the parties should be applied. Contacts considered vital in determining the state with the most significant relationship include place of the injury, domicile of the parties, and the place where the relationship between the parties is centered. Under the flexible contacts methodology applied in *Griffith*, we believe that Illinois had the most significant contacts with the workmen's compensation aspect of the case. Mr. Myers, a resident of Illinois obtained workmen's compensation benefits from Commercial Union Assurance Companies which was the workmen's compensation carrier for his employer. Myers' employer was also domiciled in Illinois and he was in Pennsylvania on a temporary sojourn on his employer's behalf. This case is multifaceted but all of the contacts vis a vis workmen's compensation were in Illinois. The fact that the accident occurred in Pennsylvania is of relatively slight significance, if any at all, with respect to the workmen's compensation aspects of the case.

In *Elston v. Industrial Lift Truck, Co.*, 420 Pa. 97, 216 A.2d 318 (1966), William Elston, a Pennsylvania resident was injured in New Jersey while working at the plant of his employer, Hussman Refrigerator Company, in Haddonfield, New Jersey. He received workmen's benefits under New Jersey law. Subsequently, Elston sued industrial Lift Truck Company, Inc. in Pennsylvania as a third party tortfeasor. Industrial sought to join Hussman as an additional defendant. This was not permitted under New Jersey law and the court below granted Hussman's motion for

judgment on the pleadings. This was affirmed by our Supreme Court which held that the sole issue was choice of law and that the law of New Jersey was properly applied. New Jersey law was in accord with the prevailing notion of insulating a statutory employer from contribution, as distinguished from Pennsylvania law. As stated at 420 Pa. 109, 110, 216 A.2d 323:

In the instant case, however, Industrial, the party asserting a right to contribution, is a stranger to the compensation system. And, in a narrow sense, unlike an employee covered by New Jersey's compensation program, it received no quid pro quo from that state to compensate for the loss of its right to contribution. *This factor, though, does not alter or in any way weaken the crucial consideration that New Jersey has the paramount interest in the manner by which its workmen's compensation program will be administered.* New Jersey has undertaken to define the obligations of an employer for injuries to his employees and makes that obligation the exclusive liability of the employer. (Emphasis added).

In *Goodemote v. Mushroom Transportation Company, Inc.,* 427 F.2d 285 (3rd Cir.1970) the plaintiff, a New York resident, sued Mushroom Transportation Company, Inc., a Pennsylvania corporation, in the district court for the Eastern District of Pennsylvania. The compensation carrier for the plaintiff's employer paid benefits to the plaintiff under New York law. The plaintiff settled with the alleged tortfeasor and under New York workmen's compensation law the compensation carrier was entitled to reimbursement, after certain payments were made. The court followed *Elston v. Industrial Lift Truck Co., supra,* and found that New York had the most significant contacts, stating at 427 F.2d 287:

Adopting the *Elston* approach here, we can find no Pennsylvania policy which would justify the application of its law to this issue. On the contrary, we think all the relevant factors indicate the paramount nature of New

York's interest. Plaintiff, rather than his counsel, is the real party in interest. He is a New York resident. His employment was covered by the New York Workmen's Compensation Law. (Emphasis added).

*Colombo v. Republic Steel Corp.*, 448 F.Supp. 833 (W.D. Pa.1978) also involved a choice of law problem. The plaintiff resided in New York and received workmen's benefits in that state. His employer was also located in New York. The plaintiff was injured while working in Pennsylvania. The issue was whether the plaintiff's employer was liable to the original defendant for contribution or indemnity. The district court stated at 448 F.Supp. 834:

Having weighed the interests of both New York and Pennsylvania in having their diametrically opposed workmen's compensation provisions with respect to employer contribution or indemnity applied herein, and relying on the overriding emphasis accorded to the state from which a plaintiff in such cases elects to receive workmen's compensation found in *Elston* and *Goodemote v. Mushroom Transportation Co.*, 427 F.2d 285 (3d Cir.1970), this Court holds that since plaintiff has elected to receive benefits from his home state, New York, that state has the paramount interest in controlling the administration of its workmen's compensation program.

In *Lewis v. Chemetron Corp.*, 448 F.Supp. 211 (W.D.Pa. 1978) the plaintiff was injured in Pennsylvania while employed by Eazor Express Company in Ohio as a truck driver. The plaintiff resided in Pennsylvania. He obtained workmen's compensation benefits under the Ohio workmen's compensation system. The plaintiff sued Chemetron in the United States District Court for Western Pennsylvania claiming negligence on the part of Chemetron's employees while loading the truck. Chemetron sought to join Eazor as a third party defendant. The court granted Eazor's motion for summary judgment noting that while several states were factually involved in the case "Ohio, where Mr. Lewis is employed, is a state under whose workmen's compensation system the plaintiffs have received benefits."

448 F.Supp. at 213. The court further stated at 448 F.Supp. 213:

> *The law does not require us to apply the law of the state whose contacts are the most numerous, but rather demands a sensitivity to the relative importance of each of the several contacts to the substantive policy of workmen's compensation.* Our efforts to assign weights to the variety of contacts presented here are guided by the analysis of the Pennsylvania Supreme Court in *Elston v. Industrial Lift Truck,* 420 Pa. 97, 216 A.2d 318 [1966], which this Court followed in *Madrin v. Wareham,* 344 F.Supp. 166 [W.D.Pa.1972]. (Emphasis added).

■ As far as workmen's compensation benefits and subrogation under the workmen's compensation act are involved, the law of Illinois under which the benefits were paid has the most significance. If Pennsylvania's no-fault motor vehicle act were applied, Commercial Union Assurance Companies would be entitled to subrogation from the settlement fund of $250,000 of amounts paid to Myers by way of workmen's compensation, to the extent of the compensation carrier's contribution over and above its contribution to the first $15,000.00 of work loss compensation. *Vespaziani v. Insana,* 501 Pa. 612, 462 A.2d 669 (1983) reversing this court's opinion in *Vespaziani v. Insana,* 293 Pa.Super. 117, 437 A.2d 1234 (1981)[2] We must remember that absent the Pennsylvania No-Fault Motor Vehicle Insurance Act, full subrogation would be permitted. The Pennsylvania Workmen's Compensation Act provides in 77 P.S. § 671:

**2.** The Supreme Court stated in *Vespaziani v. Insana, supra,* 501 Pa. at 619–20, 462 A.2d at 673:

> Accordingly, we hold that the subrogation claim of the workmen's compensation carrier is negated to the extent of those benefits paid by the workmen's compensation carrier which constitute a contribution toward the compensation of the first $15,000.00 of work loss sustained. Beyond the workmen's compensation carrier's contribution toward this first $15,000 of compensation, the subrogation claim for recovery of benefits payable has not been affected by the No-Fault Act.

"[w]here the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer ...."

It is basic in Pennsylvania that if an employer's liability is occasioned by the fault of a third person, the employer may pursue its subrogation rights under the Workmen's Compensation Act. *See Fashion Hosiery Shops v. Workmen's Compensation Appeal Board*, 55 Pa.Commw. 465, 423 A.2d 792 (1980). The law in Pennsylvania as far as subrogation is concerned has been modified by the no-fault act. In Illinois, which does not have a no-fault motor vehicle act, the employer or his workmen's compensation carrier has a right to subrogation of amounts paid by way of workmen's compensation where the employee recovers from a third party tortfeasor. The Illinois Workmen's Compensation Act provides at 48 Ill.Anno.St. 138.5(b):

Where the injury or death for which compensation is payable under this Act was caused under circumstances creating a legal liability for damages on the part of some person other than his employer to pay damages, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to compensation under this Act. *In such case, however, if the action against such other person is brought by the injured employee, or* personal representative *and judgment is obtained and paid, or settlement is made with such other person,* either with or without suit, *then from the amount received by such employee* or personal representative, *there shall be paid to the employer the amount of compensation paid or to be paid by him to such employee or personal representative including amounts paid or to be paid pursuant to Paragraph (a) of Section 8 of this Act.* (Emphasis added).

■ There is no basis for concluding that because the accident occurred in Pennsylvania that the Pennsylvania no-fault act should extend to Illinois' system of administering workmen's compensation benefits. Appellee argues that *Elston v. Industrial Lift Truck, supra,* and *Goodemote v. Mushroom Transportation, Inc., supra,* have no relevance because they were decided prior to the enactment of the Pennsylvania No-Fault Motor Vehicle Insurance Act. This argument misses the point. The question is whether the law of Illinois or Pennsylvania applies. Clearly, no-fault in Pennsylvania has changed the law of subrogation *as to cases* in which the Pennsylvania No-Fault Act applies, but we have determined that as to the subrogation aspect of this appeal, the state of Illinois has the most significant contacts.[3] Accordingly, Commercial Union Assurance Companies is entitled to subrogation from Myers.

The second issue we must deal with is the claim of Travelers Insurance Companies for reimbursement from Commercial Union Assurance Companies for medical expenses paid by Travelers to Mr. Myers. This is the question involved in Appeal No. 115 Pittsburgh 1982. The court below found for Commercial Union and we agree that its decision with respect to this phase of the case was correct. The basis of Travelers' claim for reimbursement is section 106 of the No-Fault Act, 40 P.S. § 1009.106(a)(3) which states:

(3) A claim for no-fault benefits shall be paid without deduction for the benefits or advantages which are to be subtracted from loss in calculating net loss if such bene-

---

**3.** It is not intended under the Pennsylvania No-Fault Act to give double reimbursement for items paid under the Workmen's Compensation Act. As pointed out in *Shrager* "The Pennsylvania No-Fault Motor Vehicle Insurance Act", pages 145–146:

Thus, if an injured claimant is eligible to receive Workmen's Compensation, Medicare, or other governmental benefits, but they have not yet been paid, he is entitled to full payment of his no-fault claim. No deduction may be made for the expectancy of payment of governmental benefits. The obligor who has provided full no-fault compensation to the claimant is entitled to reimbursement from the party obligated to pay or provide such benefits, or *from the claimant after he has actually received them.* (Emphasis Added)

fits or advantages have not been paid or provided to such claimant prior to the date the no-fault benefits are overdue or the no-fault benefits claim is paid. The obligor is thereupon entitled to recover reimbursemnt from the person obligated to pay or provide such benefits or advantages or from the claimant who actually receives them.

■ In the instant case, Commercial Union, the workmen's compensation carrier for Nicel Industries initially denied coverage until its liability was determined by the workmen's compensation board in Illinois. In the meantime, the no-fault insurance carrier for Mr. Miller, Travelers Insurance Companies, paid Mr. Myers' medical bills in the amount of almost $75,000 under the basic loss provisions of the no-fault act. We are now confronted with a dispute between the no-fault carrier and the workmen's compensation carrier. The court below determined that Section 106 of the no-fault act deals with the question of a primary obligor with respect to no-fault carriers. It stated that "while this is a case of first impression, and no cases have been cited to us, we feel that section 106 applies to the priority as between no-fault carriers and not as to priority with any other insurers." We do not believe it is necessary to reach this conclusion, and prefer to limit our decision to the issue before us as to whether this section applies to claims for reimbursement involving a workmen's compensation carrier which has paid benefits in another state in accordance with the law of that state. There are no cases under the no-fault act to guide us in interpreting Section 106 in this respect and the act itself does not provide us with a very bright light with which to find our way. However, following our earlier analysis concerning workmen's compensation we conclude that any claim against the workmen's compensation carrier shall be governed by the law of Illinois, the state with the most significant contacts with workmen's compensation questions. Travelers Insurance Companies seeks reimbursement solely on the basis of the Pennsylvania No-Fault Act which in the circumstances of this case does not apply to benefits paid by the compen-

sation carrier of an Illinois employer to an Illinois employee. The claim, therefore, must fail.

In appeals 114 Pittsburgh 1982 and 205 Pittsburgh 1982, the judgment for Thomas E. Myers is reversed and judgment is entered in favor of Commercial Union Assurance Companies. In Appeal No. 115 Pittsburgh 1982 judgment is affirmed.