485 A.2d 1113

Thomas E. MYERS

v.

COMMERCIAL UNION ASSURANCE COMPANIES, Nicel Industries, Inc., The Travelers Insurance Companies, Bradley A. Miller, and the City of McKeesport.

Appeal of the TRAVELERS INSURANCE COMPANIES and Bradley A. Miller at Nos. 2 and 4 W.D. Appeal Docket, 1984.

The TRAVELERS INSURANCE COMPANIES

v.

COMMERCIAL UNION ASSURANCE COMPANIES.

Appeal of the TRAVELERS INSURANCE COMPANIES and Bradley A. Miller at No. 3 W.D. Appeal Docket, 1984.

Supreme Court of Pennsylvania.

Argued Sept. 12, 1984.

Decided Dec. 20, 1984.

William K. Herrington, Pittsburgh, for appellants.

Jeffrey S. Weiss, Pittsburgh, for Thomas E. Myers.

Fred C. Trenor, Louis C. Long, Pittsburgh, for Commercial Union Assur. Companies, Nicel Industries, Inc.

Seymour A. Sikov, Pittsburgh, for City of McKeesport.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and PAPADAKOS, JJ.

OPINION

McDERMOTT, Justice.

Thomas E. Myers, while upon the business of his Illinois employer, was involved in an accident in Pennsylvania. Injuries incurred rendered him quadriplegic. At the time of the tragic incident, Mr. Myers, like his employer, was a resident of Illinois. Mr. Miller, the other driver involved, was a Pennsylvania resident and insured under a no-fault policy issued by Travelers Insurance Company. As the no-fault carrier, Travelers, forthrightly paid $74,000 medical expenses, and $250,000 in settlement for non-economic loss to Mr. Myers.

Mr. Myers also filed a claim for benefits from his employer, Nicel Industries, under the Illinois Workmen's Compensation Law. Both Nicel Industries and their compensation carrier, Commercial Union Assurance Companies contested his claim. The contest was resolved on June 28, 1979, by the Industrial Commission of Illinois in favor of Mr. Myers. He was awarded medical benefits and $120.00 per week for life from Commercial Union. Mr. Myers did not receive medical benefits from Commercial Union from the date of the accident to the date of the award. Commercial Union contended they were not obliged because those expenses had already been paid by Travelers.

Mr. Myers filed for Declaratory Judgment in an action filed in Allegheny County, Pennsylvania. The action sought an adjudication of the rights and duties owed to and by the various parties: including Commercial Union's claim for subrogation of the workmen's compensation benefits it

paid, from the settlement that Myers received for noneconomic loss. In a separate equity action Travelers sued Commercial Union for reimbursement of the medical benefits paid Mr. Myers as the no-fault obligor. All actions were consolidated and the case submitted on stipulated facts. The trial court, per the honorable S. Louis Farino, dismissed the respective claims of both insurance companies. They appealed: Commercial Union challenging the decision on its subrogation claim, and Travelers challenging the decision on its claim for reimbursement.

With regard to the claim of Commercial Union the court of common pleas had held that Pennsylvania law applied, and that Commercial Union had no basis under Pennsylvania law to support subrogation. On appeal the Superior Court reversed [1] and held that the correct law to be applied was that of Illinois, and that under the Illinois Workmen's Compensation Act [2] a compensation carrier has a right to full subrogation of amounts paid by way of workmen's compensation where the employee recovers from a third party tortfeasor.[3] *See* 48 Ill.St. § 138.5(b). The court's decision was based on its evaluation of the significant contacts which the state of Illinois had with the underlying dispute, and the lack of countervailing contacts by the Commonwealth of Pennsylvania. Their analysis was in accord with this Court's decision in *Griffith v. United Airlines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964). Mr. Myers sought allowance to appeal from the Superior Court decision but we denied allocatur. 260 W.D.Alloc.Dkt. 1983.

With regard to the claim by Travelers for reimbursement, the trial court had held that application of Section 106(a)(3)

1. Superior Court's opinion is reported at 319 Pa.Super. 21, 465 A.2d 1032 (1983).

2. 48 Ill.St. § 138.1, *et seq.*

3. The court noted in dicta that under the proper facts Commercial Union would have had a right of subrogation under Pennsylvania law to the extent of its contribution over and above the first $15,000 of work loss compensation. *See Vespaziani v. Insana,* 501 Pa. 612, 462 A.2d 669 (1983).

of the Pennsylvania No-Fault Act,[4] upon which Travelers' claim was based, was limited to claims by one Pennsylvania no-fault carrier against another. On appeal the Superior Court affirmed the order of the lower court, but not on the basis relied upon by Judge Farino. Rather, in an apparent effort to be consistent with its earlier analysis concerning Commercial Union's subrogation claim, the court concluded that any claim against the workmen's compensation carrier should be governed by the law of Illinois; and held that Section 106(a)(3) did not apply to benefits payable by the compensation carrier of an Illinois employer to an Illinois employee. Upon petition of Travelers we granted allocatur. We now reverse.

■ This Court in *Griffith v. United Airlines, Inc.*, held that in resolving a potential conflict between the application of state laws we must consider the policies and interest underlying the particular issue before the court. *Id.*, 416 Pa. at 21, 203 A.2d at 805. As further explained in *McSwain v. McSwain*, 420 Pa. 86, 215 A.2d 677 (1966), we must analyze the:

> extent to which one state rather than another has demonstrated, by reason of its policies and their connection and relevance to the matter in dispute, a priority of interest in the application of its rule of law.

*Id.*, 420 Pa. at 94, 215 A.2d at 682. Furthermore, in evaluating the interests of one jurisdiction over another, we must view the factors qualitatively as opposed to quantitatively, *Cipolla v. Shaposko*, 439 Pa. 563, 267 A.2d 854 (1970).

Turning to the present situation, it is important to note that although both actions arose from the same incident this case is wholly distinct from the companion subrogation case. In the latter all significant contacts were clearly in Illinois: the case involved an Illinois resident who, as an employee of an Illinois corporation, claimed coverage under a policy issued by an Illinois insurance carrier; and the

4. Act of July 19, 1974, P.L. 489, No. 176, art. I, § 101 *et seq.* 40 P.S. § 1009.101 *et seq.*

issue was simply whether an Illinois carrier was entitled to recover funds from an Illinois resident which it, the carrier, had been required by Illinois statute to pay. However, as we describe below, the factors and interests implicated in the present controversy are significantly different.

At the time of the accident in question the insurance claims of Mr. Myers were governed by the now repealed No-Fault Act. That Act had as its primary purpose the establishment "at reasonable cost . . . a statewide system of *prompt and adequate* basic loss benefits for motor vehicle accident victims and the survivors of deceased victims." (Emphasis added.) 40 P.S. § 1009.102(b). Pursuant thereto the Act specifically provided that claimed benefits would be considered "overdue if not paid *within thirty days* after the receipt by the obligor of each submission of reasonable proof of the fact and amount of loss sustained. . ." (Emphasis added.) 40 P.S. § 1009.106(a)(2). The Act also provided that if the accident resulting in injury occurs in this Commonwealth, *"any victim* or any survivor of a deceased victim is entitled to receive basic loss benefits in accordance with the provisions of this act." (Emphasis added.) 40 P.S. § 1009.201(a).

These provisions permitted Mr. Myers to file a claim for medical benefits against Travelers, and demand payment within thirty days of his claim, despite the fact that he was never a client of Travelers.

Such an anomaly was not totally unanticipated by the legislature. To partially correct this the legislature provided that in some instances collateral benefits, including workmen's compensation benefits, "shall be subtracted from loss in calculating net loss." 40 P.S. § 1009.206(a). However, this ameliorative provision was circumscribed by Section 106(a)(3) of the Act, which provided:

(3) A claim for no-fault benefits shall be paid *without deduction* for the benefits or advantages which are to be subtracted from loss in calculating net loss *if such benefits or advantages have not been paid or provided to such claimant prior to the date the no-fault benefits*

*are overdue or the no-fault benefits claim is paid.* The obligor is thereupon entitled to recover reimbursement from the person obligated to pay or provide such benefits or advantages or from the claimant who actually receives them.

(Emphasis added.) 40 P.S. § 1009.106(a)(3). This section in conjunction with the above cited sections, mandated the result which occurred below, i.e., that Travelers was required to pay the entire cost of Mr. Myers medical bills from the time of the accident up until the award of workmen's compensation, six months later, without ever having received any concomittant benefit, i.e., premiums. Thereafter, the compensation carrier, who was otherwise required to pay the victim's medical expenses, was spared the expense of those medicals which Travelers previously paid, despite the fact that it had received the premiums to provide coverage for this unfortunate injury.

When isolated from the entanglements of its companion, this case is simply a claim by Travelers for reimbursement of benefits it was mandated by Pennsylvania law to pay, for which Commercial Union was in fact liable.[5] Under these circumstances we fail to see how any significant interests of the state of Illinois are implicated.

By contrast there are considerable interests of the Commonwealth involved. For instance, if courts of this Commonwealth refuse to entertain suits of this nature we invite out of state employers and carriers to challenge the compensation claims of employees injured in motor vehicle accidents in this Commonwealth, knowing that the medical benefits will meanwhile be paid by a Pennsylvania carrier. The Pennsylvania carrier in turn will have to sue in a foreign state court to attempt to recover its payments.

5. There is no dispute that Commercial Union was ultimately liable for these benefits. In fact it was admitted in oral argument that this dispute arose solely because of the chronology of the underlying events. Had Commercial Union paid their workmen's compensation obligation immediately, section 206, 40 P.S. § 1009.206, would have permitted Travelers to deduct the amount of those payment from its obligation, essentially absolving them of responsibility for the payment of the medical benefits.

This situation could burden the entire insurance system in Pennsylvania: a burden that would ultimately be borne by the rate payers.[6]

In addition we view as a legitimate state interest the vindication of the legal rights of companies who have acted in good faith adherence to our statutes. Otherwise we create a hostile environment in which those companies conduct their business, thereby adversely affecting the commercial potential of the Commonwealth.

▮ Having decided that the law of Pennsylvania applies, it is clear that by virtue of Section 106(a)(3) Travelers is entitled to be reimbursed by Commercial Union for the medical benefits it was compelled to pay to Mr. Myers.

Accordingly, the order of the Superior Court is reversed and the case is remanded to the Court of Common Pleas of Allegheny County for proceedings consistent with this opinion.

ZAPPALA, J., did not participate in the consideration or decision of this case.

HUTCHINSON, J., joins in this opinion and files a separate concurring opinion.

HUTCHINSON, Justice, concurring.

I join the majority opinion. I read it as holding only that the interests of this state are more significantly implicated than those of Illinois in the dispute over who should ultimately pay this workman's medical expenses. Therefore, under the conflict of laws principles we set forth in *Griffith v. United Airlines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964), the Pennsylvania no-fault act applies and the Pennsylvania trial court properly commanded the Illinois workmen's compensation carrier to reimburse the Pennsylvania no-fault carri-

---

6. Although the No-Fault Act has been repealed since the genesis of this litigation, the new Motor Vehicle Financial Responsibility Law, Act of Feb. 12, 1984, P.L. No. 1984-11, 75 Pa.C.S. § 1701 *et seq.* carries provisions analogous to those discussed in this case. *See* §§ 1713; 1716; 1717; 75 Pa.C.S. §§ 1713; 1716; 1717. Thus the above cited interest remains viable.

er for medical expenses the latter advanced. Such a result would have encouraged the benevolent policy this state had under our repealed no-fault act of insuring immediate help for victims of Pennsylvania automobile accidents no matter what the laws of their home state or their other coverage.

I write only to disassociate myself from any implication in the majority opinion which may raise even a question, on due process grounds, of the power of Pennsylvania courts to hear Travelers' claim for reimbursement. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *United Farm Bureau Mutual Insurance Co. v. U.S.F. & G.,* 501 Pa. 646, 462 A.2d 1300 (1983) (plurality by Hutchinson, J.). This case involves only a conflict of laws issue. That issue can be resolved in a forum in either Illinois or Pennsylvania. Presumably, either state, applying the *Griffith* analysis, which is itself in accord with Restatement (Second) of Conflicts § 145 (1971), would reach the same result. The power of either forum to hear the issue is, however, unquestioned.