Rose **MONTAPERTO** and **Frank Montaperto**, Plaintiffs,

v.

**SPLIT ROCK RESORT a/k/a The Galleria and Vacation Charter, Ltd.,** Defendants.

No. CV–90–387.

United States District Court, M.D. Pennsylvania.

June 20, 1991.

---

Louis Podel, Wapner, Newman & Associates, Philadelphia, Pa., for plaintiffs.

James A. Swetz, Jane Roach, Cramer, Swetz & McManus, Stroudsburg, Pa., for defendants.

## MEMORANDUM

McCLURE, District Judge.

### I. BACKGROUND

Plaintiffs Rose and Frank Montaperto filed this action to recover for injuries sustained by Rose Montaperto when she fell while riding a bicycle in the parking lot of defendants' Pocono Mountain resort. At trial, testimony established that the accident happened while Rose Montaperto was rounding a slight curve in the parking lot driveway and was most likely caused by the wheels of her bicycle sliding on cinders. The accident occurred on November 23, 1987, and the cinders had been placed there by the resort following a recent snowstorm. Montaperto was riding a bicycle supplied by the defendant resort.

The trial concluded February 26, 1991, and the jury returned a verdict in plaintiffs' favor in the amount of $70,000.00, which was subject to reduction by the court by forty percent to $42,000.00 to reflect the jury's attribution of causal negligence to Rose Montaperto.

Plaintiffs have filed a petition for delay damages pursuant to Pa.R.Civ.P. 238 (Record Document No. 47, March 6, 1991) and a motion to alter or amend the judgment pursuant to Fed.R.Civ.P. 59(e) based on the court's refusal to enter a verdict assigning no causal fault to plaintiff Rose Montaperto (Record Document No. 47, March 12, 1991). Defendants have filed post-trial motions seeking entry of judgment N.O.V., a new trial, oral argument, and a stay of the proceedings pending the court's ruling on their motion (Record Document No. 45, March 8, 1991).

Defendants' motion for judgment N.O.V. will be granted. This ruling renders moot plaintiffs' motion to alter or amend the judgment and their motion for delay damages.

## II. DISCUSSION

### A. Defendant's Motion for Judgment N.O.V.

■ Defendants argue that judgment N.O.V. is appropriate because plaintiffs failed to adduce evidence sufficient to justify a recovery against them. Judgment N.O.V. is sparingly granted by the courts and is appropriate only if, as a matter of law, the record is "critically deficient of that minimum quantity of evidence from which the jury might reasonably afford relief." *CPR Associates, Inc., Center for Emergency Medical Education, v. The Southeastern Pennsylvania Chapter of the American Heart Association, Penn-* *sylvania Affiliate, Inc.,* No. 90–3758, slip op. at 24 (E.D.Pa. April 5, 1991) (1991 WL 53674), citing *Simone v. Golden Nugget Hotel and Casino,* 844 F.2d 1031, 1034 (3d Cir.1988). In ruling on such a motion, "the trial judge must determine whether the evidence and justifiable inferences most favorable to the prevailing party afford any rational basis for the verdict." *Bhaya v. Westinghouse Electric Corp.,* 832 F.2d 258, 259 (3d Cir.1987), *cert. denied sub nom., Westinghouse Electric Corp. v. Bhaya,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989). The motion must be denied if, upon reviewing the evidence in this light, "reasonable men could differ as to the conclusions to be drawn from the evidence." *Simmons v. City of Philadelphia,* 728 F.Supp. 352, 354 (E.D.Pa.1990).

■ Plaintiffs sought to recover on a negligence theory and were therefore required to show, under Pennsylvania law,[1] that the defendants owed plaintiffs a duty of care, that defendants breached that duty, and that the breach caused plaintiffs' injuries. *Kabo v. UAL, Inc.,* 762 F.Supp. 1190 (E.D.Pa 1991), and *Brown v. Sears, Roebuck & Co.,* No. 89–3556. (E.D.Pa. July 18, 1990) (1990 WL 102929).

■ Land owners have a duty to protect business invitees, such as the Montapertos, to use care not to injure invitees by negligent activities, to warn them of latent dangers of which the owner knows, to inspect the premises to discover possible dangerous conditions, and to take reasonable precautions to protect the invitee from foreseeable dangers. *Carrender v. Fitterer,* 503 Pa. 178, 469 A.2d 120, 123 (1983) (adopting Restatement (Second) of Torts §§ 341A, 343 & 343A (1965); *Berman v. Radnor Rolls, Inc.,* 374 Pa.Super. 118, 542 A.2d 525 (1988) and W. Prosser, *Law of*

---

1. We look to Pennsylvania's choice of law rules, *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), in deciding which state's laws apply. Pennsylvania applies the law of the place with the most significant relationship to the parties and the transaction. *Myers v. Commercial Union Assurance Cos.,* 506 Pa. 492, 485 A.2d 1113, 1116 (1984) and *Griffith v. United Air Lines,* 416 Pa. 1, 203 A.2d 796 (1964).

In this case, that state is Pennsylvania, because the accident occurred in Pennsylvania on premises owned by Pennsylvania residents. See generally: *Tiernan v. Devoe,* 923 F.2d 1024, 1033 (3d Cir.1991) (Pennsylvania law is controlling where the lawsuit arose from the collapse of a building project in Philadelphia, and most of the negotiations leading up to the alleged settlements in controversy took place among attorneys in Pennsylvania.)

*Torts* (4th ed. 1971) section 61, p. 392. These obligations do not, however, render the land owner an insurer against any type of accident that might occur on the premises or befall a patron. The land owner's duty has been discharged if he has exercised "reasonable care" for the protection of persons on the premises. W. Prosser, *supra*, section 61, p. 392.

▇ There is, likewise, no obligation to protect invitees from conditions which the land owner could not have reasonably anticipated would pose a danger or whose danger is so obvious and apparent that the invitee could reasonably be expected to take note of them and protect himself against them. W. Prosser, *supra*, section 61, p. 394 and *Restatement (Second) of Torts*, section 343A.[2] A danger is deemed obvious if both the condition and the concomitant risk would be apparent to and would be recognized by a reasonable man, in the invitee's position exercising "normal perception, intelligence and judgment." *Restatement (Second) of Torts*, section 343A, comment b. Whether a condition poses an obvious danger is generally a factual question for the jury. If, however, reasonable minds could not differ on this issue, the court may decide it as a matter of law. *Carrender, supra*, 469 A.2d at 124.

It is against these standards that we measure the evidence the Montapertos introduced against the resort. They attempted to show that the resort committed three negligent acts. Resort employees allegedly (1) failed to exercise reasonable care in maintaining the parking lot by failing to keep it free of cinders and/or by failing to remove cinders placed there during a previous snowstorm; (2) allowed Rose Montaperto to sign out a bicycle even though there was no safe place for her to ride; and (3) recommended the parking lot in response to the Montapertos question asking where they might find a level place to ride.

The evidence offered to prove the first is straightforward. The Montapertos testi-fied that there were cinders at the spot where Rose Montaperto fell. Based on that evidence, they posited that she fell because the wheels of the bicycle slid out from under her as she rounded a slight curve and crossed the cinders.

Testimony from resort employees indicated that the cinders had been distributed over the parking lot surface following a recent snowstorm and that it was the practice of the resort *not* to clean up or sweep up the cinders during the winter months, but rather to leave them in place because they provided a "headstart" in making the lot safe to traverse following the next storm. It was the resort's practice not to clean up the cinders until Spring.

▇ There is no evidence that the character of the parking lot at the spot where Montaperto fell was significantly different in any respect from the remainder of the unpaved parking lot. There was no testimony that the cinders changed the topography of the parking lot, that they were several inches thick or that they were heaped into a sizable bulge or hillock such that their mere existence created an appreciable danger to any bicycle rider attempting to traverse them. Neither the concentration of cinders in that spot, nor the parking lot itself can possibly be considered a dangerous condition. The presence of cinders in a parking lot during the winter is not a latent danger which a resort owner should reasonably expect would cause patrons to come to harm.

Although there appear to be no cases which hold that the presence of cinders under these circumstances is *not* a dangerous condition as a matter of law, there are cases involving similarly innocuous situations which afford a reasonable basis for comparison. See generally: *Hess v. United States*, 666 F.Supp. 666, 673 (D.Del. 1987) ("A terrazzo floor is not in and of itself an unreasonably dangerous condition."); *Waters v. McDaniel Recreation Center, Inc.*, 521 So.2d 788 (La.Ct.App.

**2.** Section 343A of the *Restatement of Torts (Second)* provides:

(1) A possessor of land is not liable to [its] invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

1988), *writ denied,* 524 So.2d 520 (La.1988) (The presence of gravel on a walkway did not create an unreasonably dangerous condition.) and *Crochet v. Freeman,* 504 So.2d 1064 (La.Ct.App.1987) (A piece of shell or gravel on a ramp adjacent to a parking lot did not create an unreasonably dangerous condition); *Sheridan v. Horn & Hardart Baking Co.,* 366 Pa. 485, 77 A.2d 362, 363 (1951) (applying Pennsylvania law) ("A smooth tile floor is not of itself a dangerous condition.") and *Copelan v. Stanley Co. of America,* 142 Pa.Super. 603, 17 A.2d 659, 661 (1941) (applying Pennsylvania law) (Theater patron failed to prove that use of terrazzo, a material which "tends to become slippery from use", in the construction of the theater steps on which she fell constituted a dangerous condition which the theater should have corrected.)

Contrary to plaintiffs' contention, the resort did not have a duty to clear the parking lot of cinders after every winter storm. Not only did the cinders *not* pose an unreasonable risk, allowing them to remain served a beneficial purpose. Requiring their removal after each storm would lead to an irrational result: the resort would be penalized for taking steps reasonably intended to increase the safety of its wintertime patrons.

In addition, Montaperto was not confronted with a situation in which she had no choice but to traverse the cinders. Her husband testified that the cinders were concentrated in one area. There was no testimony that the entire lot was covered with cinders such that plaintiff had no choice but to traverse them. Although Rose Montaperto testified that she did not see the cinders because she was concentrating on riding the bicycle and was looking down at her feet, she was not compelled to ride across them.

Plaintiffs further contend that the defendants should not have permitted them to sign out the bicycles unless there was a safe place to ride, or should have directed them not to ride in the parking lot, since it was not safe. This argument fails for two reasons. There is no proof that the parking lot was not a safe place to ride. More-

over, both plaintiffs were adults, knew their own abilities, and were certainly in a position to assess for themselves whether they could safely negotiate the parking lot on a bicycle. The resort was not in the position of an advisor or an expert upon whom they relied for advice.

Plaintiffs' final contention is that the resort should bear the responsibility for Rose Montaperto's fall, since the resort employee who signed out the bicycles to them suggested the parking lot when they asked where they might find a level place to ride. We reject this contention for the same reasons stated in the paragraph above.

After carefully considering all of the evidence presented and giving plaintiffs the benefit of all reasonable inferences, we can discern no reasonable basis to support a finding of negligence on the part of the resort. If this court were to sustain the verdict against the resort, it would be placing the resort in the role of an insurer by requiring that it compensate the Montapertos solely because an injury was sustained on property under its control, even though it breached no duty owed to plaintiffs, and that is not the law of this jurisdiction, or any other, so far as we are aware. See, e.g., *Copelan, supra.*[3]

---

3. See *Hess v. United States, supra,* 666 F.Supp. at 671 for a list of citations.