**Natasha YOUNG, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CHUBB CORPORATION and Federal Insurance Company), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 10, 2014.

Decided March 10, 2014.

---

Andrew R. Spirt, Philadelphia, for petitioner.

Lee S. Fiederer, Philadelphia, for respondents Chubb Corporation and Federal Insurance Company.

BEFORE: COHN JUBELIRER, Judge, and BROBSON, Judge, and COVEY, Judge.

OPINION BY Judge COHN JUBELIRER.

Natasha Young (Claimant), a Pennsylvania resident, was injured in a motor vehicle accident while in Delaware in the course and scope of her employment and received Workers' Compensation (WC) benefits pursuant to the Pennsylvania Workers'

Compensation Act (Act)[1] as a result. Thereafter, Claimant filed a third-party action, in Delaware, against the Delaware driver and received $160,000.00 to settle that action. The Chubb Corporation and Federal Insurance Company (together, Employer) filed a Review Petition, asserting that they were entitled to subrogation pursuant to Section 319 of the Act, 77 P.S. § 671. The Workers' Compensation Judge (WCJ) granted the Review Petition and directed Claimant to pay Employer $101,381.94 to satisfy Employer's WC lien. The Workers' Compensation Appeal Board (Board) affirmed, and Claimant now petitions this Court for review. On appeal, Claimant argues that the Board erred in: (1) applying Pennsylvania law instead of the more equitable Delaware law to determine Employer's subrogation rights, particularly since the amount of her third-party recovery was limited by Delaware law; (2) holding that Employer met its burden of proving the amount of its subrogation lien; and (3) ordering Claimant to reimburse Employer the entire amount of its subrogation lien. Because the Board properly determined that Pennsylvania law applies here and that Employer met its burden of proving its entitlement to subrogation, we affirm.

Claimant sustained injuries when she was involved in a motor vehicle accident while driving in Delaware on a work assignment on December 19, 2003. (WCJ Decision, Findings of Fact (FOF) ¶ 1.)[2] Employer accepted Claimant's injuries pursuant to a Notice of Compensation Payable (NCP)[3] and began paying Claimant wage loss and medical benefits under the Act. (FOF ¶ 1; Board Op. at 1.) Thereaf-

---

**1.** Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§ 1–1041.4, 2501–2708.

**2.** FOF ¶ 1 incorrectly provides the date of Claimant's accident as August 30, 2004.

**3.** Employer issued two NCPs, an original NCP and a corrected NCP. (FOF ¶ 1.)

ter, Claimant and Employer engaged in WC litigation, including Petitions to Suspend and Terminate Claimant's benefits, and two Utilization Review Petitions. (FOF ¶ 2.) On May 19, 2006, Claimant and Employer executed a Compromise and Release Agreement (C & R Agreement) wherein Claimant agreed to settle all of her future WC benefits in exchange for $85,000. (FOF ¶ 2.) In the C & R Agreement, Employer asserted a subrogation lien pursuant to Section 319 of the Act. (FOF ¶ 2.)

Claimant subsequently settled her third-party action against the Delaware driver for $160,000.00, from which Claimant's counsel (Counsel) placed one third of the settlement, $53,333.33, in an escrow account to resolve Employer's WC lien, which Counsel indicated was the "customary" way of handling a WC lien. (FOF ¶¶ 5, 7(b)-(c); WCJ Decision at 5.) There is no indication that either Claimant or Counsel advised Employer of the third-party settlement or asked for it to compromise its lien. (FOF ¶ 5; WCJ Decision at 5.) Employer filed a Review Petition asserting that Claimant and Counsel settled Claimant's third-party action without adequately protecting Employer's subrogation lien. (FOF ¶ 3.) Employer presented evidence consisting of, *inter alia,* a list of all its payments made to Claimant and on Claimant's behalf associated with Claimant's work-related injuries. (FOF ¶ 4; Employer Ex. E–3, S.R.R. at 15b–32b.) Based on that list, Employer asserted a total WC lien of $219,101.77, $101,381.94 of which Employer contends it is entitled to recover. (FOF ¶¶ 3, 5, 7(d).) The WCJ found that Employer maintained its full lien on an ongoing basis. (FOF ¶ 7(a).)

The WCJ held, *inter alia,* that Employer was entitled to subrogation under Section 319 of the Act because Employer's right to subrogation was absolute and Employer did not agree to compromise the amount of its lien. (WCJ Decision at 4–5.) The WCJ rejected Claimant's assertion that Delaware law, not the Act, governed Employer's request for subrogation because Pennsylvania had more significant contacts with this WC matter than did Delaware, relying on *Allstate Insurance Co. v. McFadden,* 407 Pa.Super. 537, 595 A.2d 1277, 1279 (1991) (applying a significant contacts test to determine whether Pennsylvania or New Jersey law would apply to a WC subrogation matter), and *Byard F. Brogan, Inc. v. Workmen's Compensation Appeal Board (Morrissey),* 161 Pa.Cmwlth. 453, 637 A.2d 689, 692 (1994) (adopting the *Allstate* rationale to determine whether Pennsylvania or West Virginia law would apply to a WC subrogation matter). (WCJ Decision at 3–4.) The WCJ struck several of the listed expenses as either duplicate entries or items not subject to subrogation, reducing the lien amount by $16,567.29. (WCJ Decision at 4.) However, the WCJ concluded that striking these expenses did not alter the result because Employer's total lien still exceeded the amount of Claimant's third-party recovery. (WCJ Decision at 4.) Finally, the WCJ disagreed with Employer that Counsel and Claimant were jointly and severally liable for repaying Employer its lien from the third-party recovery. (WCJ Decision at 4–5.) For these reasons, the WCJ held that Employer met its burden of proof on the Review Petition, granted Employer's Review Petition, directed Counsel to forward the $53,333.33 from the escrow account to Employer, and directed Claimant to pay Employer $48,048.61 to satisfy the remainder of Employer's lien. (WCJ Decision at 6; WCJ Order.) Claimant appealed to the Board,[4]

---

4. Employer also appealed the WCJ's determi-    nation that Counsel and Claimant were not

which affirmed. Claimant now petitions this Court for review.[5]

On appeal, Claimant first argues that the Board erred in relying on Pennsylvania law, rather than Delaware law, to determine Employer's subrogation rights. Claimant asserts that this Court is not bound by *Allstate* because it is a decision of the Superior Court and, more importantly, *Allstate* should not apply because Delaware law, which governed Claimant's third-party action, directly precluded Claimant from introducing certain expenses included in Employer's lien as evidence in her third-party action. Claimant observes that there is a direct conflict between the Delaware and Pennsylvania WC laws in that Delaware is more restrictive regarding an employer's subrogation rights and applies a more "equitable" approach than Pennsylvania's absolute right to subrogation. Claimant compares Section 2363(e) of Title 19 of the Delaware Code, 19 Del.Code Ann. § 2363(e), which provides that employers are to be reimbursed out of third-party action monies except for items of expense that are precluded from being introduced into evidence at trial by Section 2118 of Title 21 of the Delaware Code, 21 Del.Code Ann. § 2118 (Section 2118 of the Delaware Code), to Section 319 of the Act, which Pennsylvania Courts have long interpreted as providing employers with the absolute right to subrogation reduced only by their pro rata share of costs and fees. *See, e.g., Thompson v. Workers' Compensation Appeal Board (USF&G)*, 566 Pa. 420, 428, 781 A.2d 1146, 1151 (2001); *Young v. Workers' Compensation Appeal Board (LJB Me-chanical)*, 976 A.2d 627, 633 (Pa.Cmwlth. 2009). Since there is a direct conflict between Delaware and Pennsylvania subrogation provisions, Claimant asserts that we must engage in a conflict of laws analysis and, when completed, it will be apparent that Delaware has more significant contacts to this matter than Pennsylvania and Delaware law should govern.

In *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 21, 203 A.2d 796, 805 (1964), our Supreme Court held that in resolving a potential conflict between the application of state laws we must consider the policies and interests underlying the particular issue before the court. The Supreme Court further explained, in *McSwain v. McSwain*, 420 Pa. 86, 94, 215 A.2d 677, 682 (1966), that we must analyze the "extent to which one state rather than another has demonstrated, by reason of its policies and their connection and relevance to the matter in dispute, a priority of interest in the application of its rule of law." Furthermore, in evaluating the interests of one jurisdiction over another, we must view the factors qualitatively as opposed to quantitatively. *Cipolla v. Shaposka*, 439 Pa. 563, 566, 267 A.2d 854, 856 (1970).

In *Myers v. Commercial Union Assurance Companies*, 506 Pa. 492, 495, 485 A.2d 1113, 1115 (1984) (*Myers II*), our Supreme Court affirmed the Superior Court's decision that an Illinois insurer's claim for subrogation against a third-party claim arising from a work-related motor vehicle accident occurring in Pennsylvania was governed by Illinois WC law, not the Act. The Supreme Court noted that the

---

jointly and severally liable, but the Board affirmed that determination and Employer did not appeal the Board's affirmance to this Court.

5. "This Court's scope of review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether errors of law were made, or whether constitutional rights were violated." *Peters Township School District v. Workers' Compensation Appeal Board (Anthony)*, 945 A.2d 805, 810 n. 8 (Pa.Cmwlth.2008).

Superior Court evaluated, in accordance with *Griffith*, the "significant contacts which the state of Illinois had with the underlying dispute, and the lack of countervailing contacts by the Commonwealth of Pennsylvania." *Id.* "Contacts considered vital in determining the state with the most significant relationship include place of the injury, domicile of the parties, and the place where the relationship between the parties is centered." *Myers v. Commercial Union Assurance Companies,* 319 Pa.Super. 21, 465 A.2d 1032, 1035 (1983) (*Myers I* ), *rev'd in part on other grounds, Myers II.* Applying these factors, the Superior Court held, and the Supreme Court affirmed, that the employee and employer were Illinois residents, the employee received WC benefits under the Illinois WC law, and "all of the contacts vis a vis work[ers'] compensation were in Illinois. The fact that the accident occurred in Pennsylvania is of relatively slight significance, if any at all, with respect to the work[ers'] compensation aspects of this case." *Id.*

Subsequently, in *Allstate,* an employee was injured in a motor vehicle accident in New Jersey while in the scope of his employment, and the employer paid the employee WC benefits pursuant to the Act. *Allstate,* 595 A.2d at 1277–78. The employee eventually settled his third-party action against the New Jersey driver, and the employer and its insurer sought reimbursement for its WC payments from that third-party settlement. *Id.* at 1278. The employer and insurer argued that New Jersey law, which permitted subrogation, governed the matter, and the employee asserted that Pennsylvania law, which at the time did not permit subrogation, ap-

plied.[6] *Id.* Applying *Griffith,* the Superior Court examined the contacts each state had with the underlying controversy, which was the employer's right to subrogation for its WC payments, and concluded that Pennsylvania law governed. In so concluding, the Superior Court noted that "Pennsylvania has a significant interest in payments under its [Act] and the subrogation of Pennsylvania employers to monies paid to its employees by a third party." *Allstate,* 595 A.2d at 1279. It further pointed out that the employee was a Pennsylvania resident, the employer was a Pennsylvania corporation, the employee worked in Pennsylvania on a regular basis, and the employee "was compensated under a [WC] insurance policy obtained by his employer as required by the [Act]." *Id.* The Superior Court stated that the contacts with New Jersey were that the motor vehicle accident occurred there while the employee "was acting in the scope of his employment and the tortfeasor was a resident of New Jersey." *Id.* The Superior Court held that "the most important aspect of this case is the recapturing of monies paid in accordance with the compensation law" and, after considering all the contacts, it concluded that Pennsylvania law applied because it was "the state with the most significant interest in determining the right of an employer to subrogation where it has made payments to an injured employee." *Id.* at 1279–80.

This Court adopted the reasoning of *Allstate* in *Byard F. Brogan,* a case involving a Pennsylvania worker injured in a motor vehicle accident in West Virginia who received WC benefits under the Act and whose Pennsylvania employer sought re-

---

6. Although Section 319 of the Act allowed subrogation, Section 1720 of the Motor Vehicle Financial Responsibility Law (MVFRL) in effect at the time provided that "there shall be no right of subrogation or reimbursement

from a claimant's tort recovery with respect to [WC] benefits," *former* 75 Pa.C.S. § 1720. This prohibition subsequently was repealed by Section 25(b) of the Act of July 2, 1993, P.L. 190.

imbursement under West Virginia law.[7] Applying *Allstate*, we held that Pennsylvania, not West Virginia, law governed and that the employer was not entitled to subrogation under the Pennsylvania law that was applicable at the time of the motor vehicle accident. *Byard F. Brogan*, 637 A.2d at 693. In doing so we distinguished *Davish v. Gidley*, 417 Pa.Super. 145, 611 A.2d 1307 (1992), in which the Superior Court held that New Jersey WC law applied to a Pennsylvania claimant, employed by a New Jersey company, who was injured in a work-related motor vehicle accident in Pennsylvania because the claimant in that case collected WC benefits under New Jersey WC law and, as such, was subject to subrogation under that law. *Byard F. Brogan*, 637 A.2d at 693.

From these cases a standard has developed that the most significant, and likely determinative, contact is the WC law the parties have utilized. In WC cases the statutory and regulatory framework of the applicable WC law governs the parties' rights, duties, and obligations associated with a claimant's work-related injuries. As we stated in *Byard F. Brogan*, the state "which regulated the employer's insurance policy" under which the employer " 'made workers' compensation payments ... pursuant to [that state's] Workers' Compensation Law' " has the most significant contacts and that state's WC law should apply to matters arising in that context.[8] *Id.* at 693 (quoting *Davish*, 611 A.2d at 1310). To hold, as Claimant suggests, that a WC claim can be governed in all aspects, except one, by one state's WC law and allow that aspect to be governed by another state's WC law would invite uncertainty and piecemeal litigation in matters that have historically been governed by an established and overarching administrative process.

■ Comparing the contacts that Pennsylvania and Delaware have with this matter, we conclude that Pennsylvania has the more significant contacts with the underlying controversy than Delaware. Although Claimant contends that "[t]he litigation from which this alleged lien arises occurred in *and was governed by* the laws of ... Delaware," (Claimant's Br. at 17 (emphasis in original)), the underlying controversy here is not about the motor vehicle accident itself. Instead, this dispute is over the nature of Employer's right to recapture the WC monies it paid to Claimant under the Act. *Allstate*, 595 A.2d at 1280. Claimant is a resident of Pennsylvania and, although Employer is a New Jersey corporation, it does business in Pennsylvania and holds a Pennsylvania WC insurance policy. Importantly, Claimant has chosen to avail herself of the Act, Employer has paid her benefits pursuant to the Act, and up until this point all of the litigation concerning Claimant's receipt of WC benefits has been in Pennsylvania and pursuant to the Act. Furthermore, Claimant entered into the C & R Agreement under the Act, in which she affirmed Employer's subrogation lien. We recognize that Delaware does have contacts with this matter, namely that Employer does business there, the motor vehicle accident occurred there, the third-party tortfeasor is a Delaware resident, and the third-party litigation occurred there. However, in accordance with our precedent, we conclude that Pennsylvania law applies because it

---

7. Accordingly, even if we would not be bound by the Superior Court's reasoning in *Allstate*, we are certainly bound by this Court's reasoning in *Byard F. Brogan*.

8. Indeed, this rule has been recognized and referred to as "the Pennsylvania rule." David B. Torrey & Andrew E. Greenberg, Workers' Compensation Law and Practice § 12.24 (3d ed. 2008).

"is the state with the most significant interest in determining the right of an employer to subrogation where it has made payments to an injured employee" pursuant to the Act. *Allstate*, 595 A.2d at 1279.

Having concluded that Pennsylvania law applies, we now consider Claimant's argument that Employer did not satisfy its burden of proving its entitlement to and the correct amount of its subrogation lien pursuant to Section 319 of the Act. Claimant asserts that Employer did not present any evidence to support the causal relationship between the list of expenses Employer presented and Claimant's WC claim. Claimant maintains that the accuracy of Employer's list of expenses is suspect because Employer included at least $39,747.72 in impermissible litigation expenses that are not subject to Employer's subrogation lien. Alternatively, Claimant asserts that it is inequitable for Employer to be fully reimbursed for its subrogation lien. According to Claimant, reimbursing Employer one-third of Claimant's third-party settlement, which was the amount placed in escrow, upholds the purpose of Section 319 because it prevents Claimant from receiving a double recovery for the same injury, relieves Employer of liability that resulted from the negligent actions of the third party, and prevents that third party from escaping liability.

Section 319 of the Act governs subrogation and provides, in relevant part:

Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe ... against such third party to the extent of the compensation payable under this article by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employe.... Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe ... and shall be treated as an advance payment by the employer on account of any future installments of compensation.

77 P.S. § 671. Pursuant to the plain language of Section 319, subrogation is "automatic" and "by its terms, admits no express exceptions, equitable or otherwise." *Thompson*, 566 Pa. at 428, 781 A.2d at 1151. Thus, our Supreme Court has held that, generally, the right to subrogation is " 'statutorily absolute and can be abrogated only by choice.' " *Id.* at 429, 781 A.2d at 1152 (quoting *Winfree v. Philadelphia Electric Company*, 520 Pa. 392, 397, 554 A.2d 485, 487 (1989)). The rationale behind an employer's right to subrogation is "to prevent double recovery for the same injury by the claimant, to ensure that the employer is not compelled to make compensation payments made necessary by the negligence of a third party, and to prevent a third party from escaping liability for his [or her] negligence." *Dale Manufacturing Company v. Bressi*, 491 Pa. 493, 496, 421 A.2d 653, 654 (1980). To establish its right to subrogation, the employer must demonstrate that it was compelled to make payments due to the negligence of a third party and that the fund against which the employer seeks subrogation was for the same injury for which the employer is liable under the Act. *Id.* at 496, 421 A.2d at 655. Whether an employer is entitled "to subrogation is a question of law based upon the facts as found by the WCJ." *Kennedy v. Workers' Compensation Appeal Board (Henry Modell & Co., Inc.)*, 74 A.3d 343, 346 (Pa.Cmwlth.2013).

Initially, we note that Claimant's equitable arguments are contrary to our established case law holding that there are

no equitable exceptions to subrogation.[9] *Thompson*, 566 Pa. at 428, 781 A.2d at 1151. Thus, if Employer has satisfied its burden of proving its entitlement to subrogation and the amount of its lien, equity will not act to limit those rights.

■ Reviewing the record, it is apparent that Employer was compelled to make payments pursuant to the Act due to the negligence of the third-party tortfeasor who caused Claimant's motor vehicle accident and that the third-party settlement of $160,000.00 was for the same motor vehicle accident that resulted in Claimant's work-related injuries. Accordingly, Employer has established its right to subrogation. *Dale Manufacturing*, 491 Pa. at 496, 421 A.2d at 655. To satisfy its burden of proving the amount of its subrogation lien, Employer presented a list of payments it asserted were related to Claimant's WC claim. Claimant attacks the validity of that list based on errors Claimant alleges are contained therein.

■ In finding that Employer's total lien for wage loss and medical benefits it paid was $214,181.29, the WCJ accepted Employer's list, subtracting $16,567.29 for duplicate entries and items which are not subject to subrogation, as credible evidence of what Employer paid Claimant in wage loss and medical benefits. In subtracting only $16,567.29 from Employer's lien, and not the entire amount of $39,747.72 asserted by Claimant to be unrecoverable, the WCJ correctly recognized that the attorney fees Employer paid to Claimant's counsel in the amount of $23,180.43 are considered part of a claimant's compensation and, therefore, are to be included in an employer's subrogation lien. *Young*, 976 A.2d at 629. The WCJ,

as fact finder, has the sole authority to assess credibility, resolve evidentiary conflicts, and determine what weight to give the presented evidence. *Elliott Turbomachinery Co. v. Workers' Compensation Appeal Board (Sandy)*, 898 A.2d 640, 647 (Pa.Cmwlth.2006). Employer's list of payments, which sets forth each payment in detail as to date paid; payee name; amount paid; and type of payment, such as attorney's fees, ambulance fees, hospital bills, physical therapy bills, etc., constitutes "such relevant evidence as a reasonable person might accept as adequate to support [the] conclusion," i.e., substantial evidence, *id.*, that Employer paid these amounts in association with Claimant's WC claim. Hence, the WCJ's finding regarding the amount Employer paid is binding on this Court. *Repash v. Workers' Compensation Appeal Board (City of Philadelphia)*, 961 A.2d 227, 233 (Pa.Cmwlth.2008). Moreover, because Employer made payments for medical bills submitted for care rendered to Claimant for the work injury, if Claimant now wishes to challenge whether such payments were related to the work injury, the burden is on Claimant to demonstrate that such payments were not. *Risius v. Workers' Compensation Appeal Board (Penn State University)*, 922 A.2d 72, 76 (Pa.Cmwlth.2007).

■ Claimant also argues that reimbursing Employer one-third of Claimant's third-party settlement, which was the amount placed in escrow, upholds the purpose of Section 319 of the Act and asks that this Court order Employer to accept this compromise of Employer's subrogation lien. However, under the Act, this Court has no authority to do so. Any compromise of Employer's subrogation

---

9. Although not applicable here, our Supreme Court has stated that "there may be circumstances where an employer undertakes in deliberate bad faith to subvert a third party suit brought by its employee, circumstances which might require a different calculus" on whether subrogation is available to that employer. *Thompson*, 566 Pa. at 432, 781 A.2d at 1154.

lien required Employer's consent. *See Thompson*, 566 Pa. at 429, 781 A.2d at 1152 (stating an employer's right to subrogation can be abrogated only by choice).

Accordingly, we affirm the Board's Order.[10]

### ORDER

**NOW**, March 10, 2014, the Order of the Workers' Compensation Appeal Board entered in the above-captioned matter is hereby **AFFIRMED**.

10. By letter dated September 11, 2013, Employer advised this Court, Claimant and Counsel of its intent to seek counsel fees pursuant to Rule 2744 of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 2744 (permitting an appellate court to award reasonable attorney's fees "if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate, or vexatious"). Although Employer has not filed a motion requesting attorney's fees we note that, pursuant to *Phillips v. Workmen's Compensation Appeal Board (Century Steel)*, 554 Pa. 504, 510–11, 721 A.2d 1091, 1094 (1999), employers are not entitled to counsel fees under Pa. R.A.P. 2744.