613 A.2d 132

**BAIERL CHEVROLET, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (SCHUBERT), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted April 16, 1992.

July 22, 1992.

368

Fred C. Trenor and David F. Ryan, for petitioner.

Alexander J. Pentecost, for respondent.

Before McGINLEY and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

This is an appeal by Baierl Chevrolet (Employer) from an order of the Workmen's Compensation Appeal Board (Board) which affirmed the referee's determination that Pennsylvania Blue Cross/Blue Shield (Blue Shield) was entitled to subrogation for payment of medical expenses incurred by Carl Schubert (Schubert) as a result of a work related injury on April 2, 1987.

Schubert suffered a work related injury on April 2, 1987 for which he received treatment during the month of April 1987 from health care providers. Blue Shield paid Schubert's health care providers a total of $2,844.00. On June 1, 1987, Schubert returned to work at wages equal to his pre-injury wages. Thereafter he filed two claim petitions against Employer, one on July 16, 1987 and one on August 13, 1987. These petitions were assigned to Referee Marvin A. Luxenberg. Hearing on Schubert's two petitions was scheduled for September 2, 1987 which was postponed to November 4, 1987. At the November 4, 1987 hearing, the parties agreed to settle Schubert's claim and the case was continued until February 18, 1988.

As a result of the November 4, 1987 agreement to settle Schubert's claim, a notice of compensation payable was executed on December 22, 1987 providing for a weekly disability rate of $361.00, being the maximum allowable, beginning April 9, 1987. Since Schubert had returned to work, a supplemental agreement was agreed to, effective January 5, 1988, whereby Schubert was to receive compensation benefits "from April

through June 1, 1987 at the rate of $361.00 per week," and benefits were suspended. Neither the notice of compensation payable nor the supplemental agreement mentions or provides for payment of the medical bills incurred by Schubert in the treatment of his work related injuries.

At a date not revealed in the record, Alexander Pentecost, Esq. (Pentecost), counsel for Schubert, received a letter from Blue Shield, dated December 21, 1987, in which Blue Shield, *inter alia*, requested Pentecost to represent it to collect the $2,844.00 it paid for Schubert's medical care for his work related injury.

By letter dated January 25, 1988 Pentecost sent to counsel for Employer the "Supplemental Agreements which have been executed by Mr. Schubert. Also enclosed is a request for subrogation from Blue Shield which we have received together with a list of the payments made...."

At the hearing before Referee Luxenberg on February 18, 1988, which had been postponed from November 4, 1987, Schubert's counsel requested permission to withdraw Schubert's two claim petitions by reason of the executed supplemental agreement. Referee Luxenberg, by decision, granted Schubert's counsel's request. The record before us does not show that Blue Shield's subrogation interest was raised before Referee Luxenberg at or before the February 18, 1988 hearing.

On April 14, 1989, Schubert filed a petition to review notice of compensation payable against Employer and its insurance carrier, American States, Inc., alleging, "The defendants have not paid Blue Cross/Blue Shield subrogation." This petition was assigned to Referee Robert F. Steiner who, after hearing, entered an order on March 14, 1990 that Employer and/or its insurance carrier "reimburse Pennsylvania Blue Shield's subrogation lien of $2,844.00." The Board, on July 31, 1991, affirmed the decision of the referee.

The Employer claims that both the Referee and the

Board committed an error of law[1] in concluding that Blue Shield is entitled to subrogation.

The Employer raises the issue whether the referee erred as a matter of law in granting subrogation to Blue Shield since the parties had not agreed upon Blue Shield's right to subrogation and the right to subrogation was not initially established before the referee.[2] Employer also argues in its brief that since the subrogation claim of Blue Shield was not timely raised, it expired when Referee Luxenberg entered an order allowing Schubert to withdraw his two claim petitions.

Section 319 of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 671, is in two paragraphs. Only the second paragraph is herein relevant.[3] The second paragraph applies where an employer or insurance company has made payments for either disability or medical expense under some non-workmen's compensation program with subsequent determination that the payments were compensable under the Act. *Humphrey v. Workmen's Compensation Appeal Board (Supermarket Service)*, 100 Pa.Commonwealth Ct. 33, 514 A.2d 246 (1986). It is the second paragraph of Section 319 which governs herein and it provides as follows:

Where an employe has received payments for the disability or medical expense resulting from an injury in the course of his employment paid by the employer or an insurance company on the basis that the injury and disability were not compensable under this act in the event of an agreement or

1. Our scope of review is limited to a determination of whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation)*, 139 Pa.Commonwealth Ct. 15, 589 A.2d 291 (1991).

2. Employer raised a second issue, i.e., "Whether an Employer is obligated to reimburse an insurer for medical bills not pertaining to a work-related injury." We do not reach this issue by reason of our disposition of the first issue.

3. The first paragraph is applicable only to those situations where a third party, unrelated to the employer, has been wholly or partially responsible for causing the work related injury. *See Humphrey v. Workmen's Compensation Appeal Board (Supermarket Service)*, 100 Pa. Commonwealth Ct. 33, 514 A.2d 246 (1986).

award for that injury the employer or insurance company who made the payments shall be subrogated out of the agreement or award to the amount so paid, if the right to subrogation is agreed to by the parties or is established at the time of hearing before the referee or the board.

In *Humphrey,* we held that a right of subrogation on the part of the subrogee exists under the second paragraph of Section 319, *if* that right is determined to have been properly established. (Emphasis in original.) We further held in *Humphrey,* citing *Traveler's Insurance Company v. Hartford Accident and Indemnity Co.,* 222 Pa.Superior Ct. 546, 294 A.2d 913 (1972), that subrogation, being an equitable concept, was not self-executing and had to be asserted with reasonable diligence.

In *Workmen's Compensation Appeal Board v. Olivetti Corporation of America,* 26 Pa. Commonwealth Ct. 464, 364 A.2d 735 (1976), Olivetti contended that its non-occupational insurance carrier, Aetna Life and Casualty Co., should be given the right of subrogation for payments which it made to employee or, in the alternative, that Olivetti and its compensation carrier, Travelers Insurance Co., be given credit for future installments of compensation for what had already been paid. Although there was evidence that the payments were made by Aetna and not by Travelers, the subrogation claim had been raised for the first time in the appeal to this Court and Aetna was not joined in those proceedings to assert its right of subrogation. We held Section 319 of the Act was not applicable and rejected Olivetti's contention that Aetna was subrogated to claimant's right to receive compensation payments from Travelers.

■■■■ Olivetti makes it clear that a subrogation claim must be asserted during the pendency of a workmen's compensation proceeding. Furthermore, in *General Tire and Rubber Co. v. Workmen's Compensation Appeal Board,* 16 Pa. Commonwealth Ct. 473, 332 A.2d 867 (1975), we held that if subrogation rights exist in favor of the insurance company making the payments, it would be the insurance company, not the employer, who could seek subrogation. We cited *General* with

approval in *Olivetti* when, in rejecting the subrogation claim, we noted that Aetna had not joined in the proceedings. *General* and *Olivetti,* in requiring that subrogation can only be pursued by the employer or insurance company, reflects the clear, plain and unambiguous language of the second paragraph of Section 319 which affords subrogation rights only to "the employer or insurance company who made the payments" to the injured employee. This is consistent with *Holgate v. Workmen's Compensation Appeal Board (City of Philadelphia),* 104 Pa. Commonwealth Ct. 32, 35, 521 A.2d 82, 84 (1987), wherein we said, "The concept of subrogation is based on 'the right of one, who has paid an obligation which another should have paid, to be indemnified by the other.'" In those cases where no claim petition has been filed by reason of acknowledgement of liability by an employer in the execution of a notice of compensation payable not containing an agreement for subrogation in favor of the subrogee, a petition to enforce a subrogation right must be brought in the name of the subrogee against the entity who should have paid.

Herein, Schubert's health care providers were paid by Blue Shield for treatment of his work related injuries. Although the record is not clear as to exactly when Blue Shield became aware that Schubert's injuries were work related, the record does establish that it did know at sometime before December 21, 1987 and it also knew prior thereto that Schubert was being represented by Pentecost on a claim petition against Employer. These facts are conclusively established by Blue Shield's December 21, 1987 letter in which it wrote:

It is our understanding you represent Carl Schubert in his claim for Worker's Compensation injury benefits.

The following payments have been made by us.

(SEE ATTACHED)

Pennsylvania Blue Shield's total at the time is $2844.00. You may consider this letter as your authorization to protect our interests.

.     .     .     .     .

We will be in touch with you periodically with any update and a request for the present status of this file.

(R.R. 15.)

At the hearing on Schubert's petition for review of compensation payable, the following stipulation was entered into:

Referee Steiner: Claimant and defendant, can you stipulate that you had no discussions on the subrogation issue prior to that January 25, 1988 letter in which claimant's counsel sent the supplemental agreement dated January 5, 1988 to defendant counsel and advising at that time of the subrogation lien of Blue Shield?

Mr. Caramanna: So stipulated by the claimant.

Referee Steiner: Defendant counsel.

Mr. Trenor: That's right, January 25, 1988 or shortly thereafter.

(R.R. 36.)

In addition to the foregoing stipulation, there is nothing in the record to indicate that there were any discussions concerning subrogation between Schubert and Employer, or Schubert and Blue Shield, or Blue Shield and Employer at any time between January 25, 1988 and February 18, 1988, the day Schubert withdrew both of his petitions with the permission and order of Referee Luxenberg.

Section 319 provides, as it applies to the facts herein, that Blue Shield, who made the medical payments for Schubert, shall be subrogated out of the agreement *if* the right to subrogation is agreed to by the parties or is established at the time of the hearing before the referee. There is no evidence that Blue Shield and Employer or its carrier in the proceedings before Referee Luxenberg agreed to Blue Shield's right to subrogation nor was its right to subrogation established in the hearings before Referee Luxenberg. Blue Shield was not a party nor did it seek to become a party to the proceedings before Referee Luxenberg.

Notwithstanding, Blue Shield's failure to assert its right to subrogation in the proceedings pending before Referee Luxenberg, for reasons not apparent in the record, Schubert, on

April 14, 1989, a year and two months after the termination of the proceedings before Referee Luxenberg, filed a petition against Employer asserting that Employer "[has] not paid Blue Cross/Blue Shield subrogation." At the hearing before the referee on this petition on May 31, 1989, except for the stipulation previously set forth, no testimony was presented. The only persons present at this hearing were counsel for Schubert and counsel for Employer. (R.R. 30.)

A second hearing was held on September 11, 1989 on Schubert's petition of April 14, 1989 at which time there was put in evidence by Schubert, a letter from counsel for Schubert to Referee Steiner enclosing Blue Shield's December 21, 1987 letter to counsel for Schubert and the medical bills of Schubert which Blue Shield paid.[4]

Blue Shield, in the record before us, did not join in or appear in the proceeding either before Referee Steiner or before the Board, nor is it a party to the proceeding before us.

Section 319 only permits subrogation by an employer or an insurance company. There is no provision in Section 319 which permits the injured employee who entered into a notice of compensation payable, followed by a supplemental agreement with the employer, to bring a separate proceeding against the employer to enforce a subrogation right of an insurance company.

The record of the hearings before the referee is devoid of any evidence to support an award directing Employer to reimburse Blue Shield's subrogation right and the Board was in error in affirming the referee.

## ORDER

AND NOW, this 22nd day of July, 1992, the July 31, 1991 order of the Workmen's Compensation Appeal Board is reversed.

4. Again, the only persons present at the hearing were counsel for Schubert and counsel for Employer.

McGINLEY, Judge, dissenting.

I respectfully dissent. The second paragraph of Section 319 of the Act; 77 P.S. § 671, provides that an "employer or insurance company who made the payments shall be subrogated ... if the right to subrogation is agreed to by the parties or is established *at the time of hearing before the referee or the board.*" (Emphasis added.)

In the present case, a supplemental agreement was executed on January 5, 1988, establishing Claimant's injury as compensable. Blue Shield's subrogation interest, in the amount of $2,844.00, was communicated to Employer by letter dated January 25, 1988. At this time, Employer did not object to Blue Shield's request for subrogation. Referee Luxenberg's decision granting Claimant's request to withdraw his claim petitions, based on the supplemental agreement, was not filed until February 17, 1988. Consequently, I would conclude that Blue Shield's subrogation interest was timely established and I would affirm the Board.