**INDUSTRIAL RECISION SERVICES and Ohio Casualty Group, Petitioners,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (FARBO), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 30, 2002. Decided Oct. 17, 2002.

James S. Ehrman, Pittsburgh, for petitioners.

No appearance entered on behalf of respondent.

BEFORE: FRIEDMAN, Judge, SIMPSON, Judge, and JULIANTE, Senior Judge.

OPINION BY Judge FRIEDMAN.

Industrial Recision Services (Employer) petitions for review of the March 27, 2002, order of the Workers' Compensation Appeal Board (WCAB), which affirmed the decision of the workers' compensation judge (WCJ) to grant Anthony Farbo's (Claimant) claim petition. We affirm.

On October 12, 1998, Claimant injured his right knee after he slipped on coolant leaking from a machine while following his supervisor at work. Claimant received emergency room treatment of his right knee and returned to work the next day. Claimant filed claim and penalty petitions against the Employer and its workers' compensation insurer, Great American Insurance Company, alleging an injury to his right and left knee and a lumbar injury. Claimant sought medical bills and counsel fees for an unreasonable contest.[1]

Employer denied the allegations and four hearings were held before the WCJ from July 30, 1999, through August 2, 2000. Claimant testified on his own behalf in support of the claim petition and stated that a few days after he slipped at work, his left knee began to bother him. Claimant testified that he recalled complaining of additional back pain to his panel provider, Prompt Care. (WCJ's Findings of Fact, No. 3; R.R. at 468a.)

After a month of unsuccessful treatment, Prompt Care referred Claimant to David Babins, M.D., a board certified orthopedic surgeon, who ordered x-rays and an MRI of Claimant's left knee and back. Dr. Babins continued treatment, and Claimant continued to work in a light duty capacity. Claimant acknowledged that neither of his knees still caused him pain, but his back "was still hurting like crazy."

(WCJ's Findings of Fact, No. 3; R.R. at 468a.)

Claimant also offered Dr. Babins' deposition testimony. Dr. Babins stated that during Claimant's initial visit, he complained of left knee pain and provided a history of injuring his right knee on October 12, 1998. Dr. Babins stated that Claimant had excellent mobility of his knee with mild tenderness, but after treatment provided no relief, Dr. Babins began to question whether Claimant had internal derangement of his left knee, or whether he had nerve impingement related to his back. (WCJ's Findings of Fact, No. 4; R.R. at 469a.) Dr. Babins noted that, because the MRI of the left knee was unremarkable, he believed that Claimant's pathology was coming from his back. Thus, Dr. Babins recommended lower back surgery, which was performed on January 24, 2000.

As to the source of Claimant's difficulty, Dr. Babins testified that he disagreed with a radiologist's interpretation of Claimant's bone scan as showing arthritic change. Instead, Dr. Babins opined that Claimant's bone scan was more consistent with traumatic injury or reactivation of a stress fracture, which was related to the work-related incident. (WCJ's Findings of Fact, No. 4; R.R. at 469a.) During cross examination, Dr. Babins continued to attribute Claimant's condition to the incident at work and specifically rebutted contrary opinions, although he acknowledged that he may not have considered Claimant's emergency room records which indicated prior left knee pain. Dr. Babins also testified that although Claimant has never had significant back pain, it was his belief that the injury was to his back and resulted in the presentation of knee pain. (WCJ's Findings of Fact, No. 4; R.R. at 469a.)

1. The WCJ accepted Claimant's request to amend the claim petition to include a claim for wage loss indemnity benefits from January 20, 2000, to July 5, 2000.

In its defense, the Employer presented the testimony of Steven R. Bailey, M.D., a board certified orthopedic surgeon, who performed an independent examination of Claimant and reviewed the MRI of Claimant's left knee. Dr. Bailey testified that he examined both of Claimant's knees and found them to be normal. Moreover, Dr. Bailey stated that Claimant's lower back did not show objective pathology. Dr. Bailey opined that Claimant did not suffer a left knee or lower back injury as a result of the accident at work because Claimant initially complained of only right knee pain after he slipped. (WCJ's Findings of Fact, No. 6; R.R. at 470a.) On cross-examination, Dr. Bailey testified that he found no objective evidence to support Claimant's complaints of left knee and lower back injuries, and he concluded that Claimant was recovered from his slip at work and capable of working.

Approximately one week before the record closed in the claim proceedings, Claimant submitted correspondence from Highmark Blue Cross (Blue Cross), indicating a lien for medical bills that it paid on behalf of Claimant in the amount of $10,043.42.[2] Employer objected[3] to Blue Cross' subrogation lien on the basis that the documentation was insufficient to preserve the lien, and that the issue was outside of the WCJ's jurisdiction.

The WCJ granted the claim petition[4] after finding Claimant's testimony credible and accepting Dr. Babins' opinion as more persuasive on the issue of Claimant's original complaints of right knee pain and his subsequent development of left knee and lower back pain. The WCJ also concluded that Blue Cross' subrogation interest was properly preserved, but could not determine the amount reimbursable because the documentation verifying actual paid medical expenses was inconsistent. The WCJ instructed Blue Cross to provide documentation verifying actual paid medical expenses before it would receive payment. On appeal, the WCAB affirmed. Employer now petitions for review of the WCAB's order.

 Before this court,[5] Employer first argues that the WCJ's decision was not based on substantial and competent medical testimony. Generally, the claimant must present unequivocal medical testimony to establish the causal connection between an alleged injury and the work-related incident.[6] *Cromie v. Workmen's Compensation Appeal Board, (Anchor Hocking Corporation)*, 144 Pa.Cmwlth.37, 600 A.2d 677 (1991). Unequivocal medical evidence consists of testimony from the medical expert that, in his professional

2. A supplemental lien report, however, listed medical bills from January 13, 1999, through July 17, 2000, in the total amount of $21,492.92.

3. Although the WCJ acknowledged that the reasonableness and necessity of medical bills is subject to the utilization review process, the subrogation issue was well within her authority pursuant to section 319 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 671.

4. The WCJ concluded that the Employer's contest was reasonable, based on Dr. Bailey's opinions, and it did not violate the Act by

failing to pay medical bills in a disputed issue. Thus, penalties were not awarded.

5. Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

6. A determination that certain medical testimony is equivocal is not a finding of fact but a conclusion of law that is reviewable by this court. *Lewis v. Commonwealth*, 508 Pa. 360, 498 A.2d 800 (1985).

opinion, the injury came from the related incident. *See Lewis v. Commonwealth,* 508 Pa. 360, 498 A.2d 800 (1985). Medical evidence that relies on possibilities, or is less than positive, will not constitute legally competent evidence to establish causation. *Bisesi v. Workmen's Compensation Appeal Board,* 61 Pa.Cmwlth. 260, 433 A.2d 592 (1981). The medical expert's testimony, however, must be reviewed and taken as a whole and can remain competent even if the expert expresses uncertainty, reservation, doubt or lack of information about medical or scientific details, and the initial opinion or belief is not recanted. *Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board (Lucas),* 77 Pa.Cmwlth. 202, 465 A.2d 132 (1983). Dr. Babins' testimony satisfies this standard.

A careful review of Dr. Babins' testimony shows that although he admits that he did not consider evidence of Claimant's prior left knee pain, this fact did not negate his ultimate opinion as to the cause of Claimant's problems. Indeed, Dr. Babins reaffirmed his earlier position that Claimant's pain was related to his work injury and explained that, to his knowledge, Claimant did not have a prior medical history related to back problems. Dr. Babins did not change his conclusion that Claimant's subsequent back pain was caused by a work-related incident. Having reviewed this testimony in its entirety, we conclude that Dr. Babins' medical opinion is unequivocal and, thus, competent to support the WCJ's conclusion.

Next, Employer argues that the WCJ erred in determining that Blue Cross was entitled to reimbursement of Claimant's medical expenses. Employer asserts that section 319 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 671, precludes Blue Cross' subrogation interests because it did not establish its right of subrogation during a hearing before the WCJ. Section 319 states:

Where an employe has received payments for the disability or medical expense resulting from an injury in the course of his employment paid by the employer or an insurance company on the basis that the injury and disability were not compensable under this act in the event of an agreement or award for that injury the employer or insurance company who made the payments shall be subrogated out of the agreement or award to the amount so paid, if the right to subrogation is agreed to by the parties or is established at the time of hearing before the referee or the board.

77 P.S. § 671.

Subrogation rests on the equitable principle that a party that has paid an obligation for which another party is responsible should be indemnified by the responsible party. *See Lamberson v. Workmen's Compensation Appeal Board (U.S. Silica),* 654 A.2d 668 (Pa.Cmwlth. 1995). In support of its contention, Employer relies on this court's decision interpreting section 319 in *Baierl Chevrolet v. Workmen's Compensation Appeal Board (Schubert),* 149 Pa.Cmwlth.367, 613 A.2d 132 (1992), *appeal denied,* 533 Pa. 662, 625 A.2d 1195 (1993). In *Baierl,* this court concluded that the assertion of subrogation rights by a third party insurer under section 319 was improper because the insurer did not raise the issue of subrogation during the initial hearing on workers' compensation benefits, and did not establish such right pursuant to a contract agreement. Employer asserts that, as in *Baierl,* Claimant failed to establish a right of subrogation on behalf of Blue Cross.

*Baierl,* however, is distinguishable from the circumstances here. In *Baierl,* the claimant never raised the issue of subroga-

tion during the original claim proceedings. The claimant only attempted to assert the subrogation lien on behalf of the insurer one year and two months after the parties agreed to settle the claim petition by executing a notice of compensation payable and supplemental agreement. The court, in *Baierl*, stated that subrogation claims must be asserted by the insurance company during the pendency of a workers' compensation proceeding.[7] *Id.* at 143, 613 A.2d 132.

Here, however, Employer never acknowledged liability and, during the pendency of the claim proceedings, a letter was sent on behalf of Blue Cross to the WCJ with supporting documentation, asserting a lien for Claimant's medical bills.[8] The letter was supported with documentation from Blue Cross' initial counsel, turning over legal representation for the lien and setting forth the fee agreement pursuant to that arrangement. Before closing the record, the WCJ concluded that Blue Cross had preserved the lien, but required additional documentation because of inconsistencies over the lien amount. Thus, in contrast to the situation in *Baierl*, Blue Cross' right to subrogation was raised and established during the original claim proceedings.

 As this court has previously noted, the workers' compensation insurer is responsible for paying medical expenses for work-related injuries, and the logical result to follow from the determination that the injury was work-related is to conclude that the insurer, here Blue Cross, should be reimbursed for sums expended.

Accordingly, we affirm.

### ORDER

AND NOW, this 17th day of October, 2002, the order of the Workers' Compensation Appeal Board, dated March 27, 2002, is hereby affirmed.

7. This court also noted that a petition to enforce subrogation must be brought in the name of the subrogee against the entity that should have paid because a claim petition was absent and the employer had acknowledged liability. Thus, the claimant in *Baierl*, having entered into a notice of compensation payable with the employer, lacked authority to bring a claim on behalf of the third party insurer.

8. Employer claims that the present circumstances are factually similar to *Baierl*, in which the claimant submitted a letter from the insurer authorizing the claimant to protect the insurer's interests. In that case, however, the authorization letter post dated the initial hearing at which the parties agreed to settle the claim. Moreover, despite authorization the subrogation issue was never raised by the claimant on the insurer's behalf. Here, Blue Cross entered into a letter providing authorization, and a fee agreement with Claimant's counsel to affirmatively assume representation of its interests. Most important, Claimant's counsel acted under this authorization while the matter was still subject to review before the WCJ.