**LIBERTY MUTUAL INSURANCE COMPANY a/s/o Catherine Lamm, Appellants**

v.

**EXCALIBUR MANAGEMENT SERVICES d/b/a Excalibur Insurance Management and Luzerne County.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 2013.
Decided Nov. 8, 2013.

David E. Prewitt, Philadelphia, for appellants.

Mark W. Bufalino, Wilkes–Barre, for appellees.

BEFORE: PELLEGRINI, President Judge, McGINLEY, Judge, LEADBETTER, Judge, SIMPSON, Judge, BROBSON, Judge, McCULLOUGH, Judge, and COVEY, Judge.

OPINION BY Judge LEADBETTER.

Liberty Mutual Insurance Company, a/s/o Catherine Lamm, appeals from an order of the Court of Common Pleas of Luzerne County that granted the preliminary objection in the nature of a demurrer of Excalibur Management Services

d/b/a Excalibur Insurance Management and Luzerne County (collectively, Appellees), thereby dismissing Liberty Mutual's complaint seeking judgment against Appellees for medical benefits in the amount of $15,912.48, together with interest and costs, that Liberty Mutual paid to Lamm pursuant to a personal automobile insurance policy. In their preliminary objection, Appellees asserted that Liberty Mutual failed to exercise or exhaust its statutory remedy under Section 319 of the Workers' Compensation Act (Act),[1] the subrogation provision, during the pendency of Lamm's workers' compensation claim for injuries sustained in an automobile accident that occurred during the course and scope of her employment with Employer Luzerne County. We agree with common pleas that Liberty Mutual had to establish its subrogation interest during the pendency of the workers' compensation proceedings and, accordingly, affirm.[2]

In January 2010, Lamm was involved in a work-related automobile accident that led to her July 2010 workers' compensation claim against Employer. In March 2011, Lamm and Excalibur, Employer's workers' compensation insurer, entered into a compromise and release agreement thereby resolving her workers' compensation claim. In March 2012, Liberty Mutual filed a complaint in the Court of Common Pleas of Philadelphia County averring that it had provided first-party medical benefits to Lamm pursuant to an automobile insurance policy. Further, Liberty Mutual alleged that it had paid Lamm medical benefits pursuant to that policy as a result of Excalibur's July 15, 2010, denial of her workers' compensation claim. Accordingly, citing the primacy of workers' compensation over automobile insurance benefits, Liberty Mutual asserted that Appellees were obligated to reimburse it and alleged three theories of recovery: 1) reimbursement pursuant to Section 1719 of the Motor Vehicle Responsibility Law (MVFRL),[3] the coordination of benefits provision; 2) common law contribution; and 3) common law reimbursement/indemnity.

In response, Appellees filed the preliminary objection at issue pursuant to Pennsylvania Rule of Civil Procedure No. 1028(a)(7), failure to exercise or exhaust a statutory remedy.[4] Citing Liberty Mutual's failure to take any action to secure its subrogation right or right to reimbursement during the pendency of the workers' compensation proceedings, common pleas determined that Liberty Mutual's claim failed as a matter of law and granted the preliminary objection. In so doing, the

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 671.

2. In ruling upon a preliminary objection in the nature of a demurrer, the court must accept as true all well-pled facts and all reasonable inferences deducible therefrom, and it must determine whether the facts pled are legally sufficient to permit the action to continue. *Altoona Housing Auth. v. City of Altoona,* 785 A.2d 1047, 1050 (Pa.Cmwlth.2001). In that a demurrer results in the dismissal of a suit, it should be sustained only in cases that are clear and free from doubt and only where it appears with certainty that the law permits no recovery under the allegations pleaded.

*Pa. Div., Horsemen's Benevolent & Protective Ass'n, Inc. v. Mountainview Thoroughbred Racing Ass'n,* 855 A.2d 957, 961 (Pa.Cmwlth. 2004).

3. 75 Pa.C.S. § 1719. Section 1719 of the MVFRL provides, in pertinent part, as follows: "Except for workers' compensation, a policy of insurance issued or delivered pursuant to this subchapter shall be primary."

4. Appellees also filed a preliminary objection for improper venue, which a Philadelphia judge granted. Liberty Mutual has not challenged the grant of that preliminary objection.

court noted that Liberty Mutual was clearly aware of the pendency of Lamm's workers' compensation claim prior to the March 2011 compromise and release as evidenced by Lamm's response on Liberty Mutual's July 7, 2010 "Statement of Claim, Financial Responsibility Benefits" form. Exhibit G to Preliminary Objections; Supplemental Reproduced Record (S.R.R.) at 76b.[5] Liberty Mutual's timely appeal followed.[6]

◼ Notwithstanding Liberty Mutual's position to the contrary, Section 319 of the Act governs the present case. Specifically, the second paragraph of Section 319 provides for the subrogation rights of an insurance company that made payments for medical expenses pursuant to a non-workers' compensation program:

> Where an employe has received payments for the disability or medical expense resulting from an injury in the course of his employment paid by the employer or an insurance company on the basis that the injury and disability were not compensable under this act in the event of an agreement or award for that injury *the employer or insurance company who made the payments shall be subrogated out of the agreement or award to the amount so paid, if the right to subrogation is agreed to by the parties or is established at the time of the hearing before the referee or the board.* [Emphasis added].

Accordingly, "the second paragraph of Section 319 contemplates subrogation established either by contract (agreed to by the parties) or by litigation (established at the time of the hearing)." *Independence Blue Cross v. Workers' Comp. Appeal Bd. (Frankford Hosp.),* 820 A.2d 868, 872 (Pa. Cmwlth.2003).

In the present case, there is no dispute that the parties did not enter into a contract. Pursuant to the plain language of Section 319, therefore, Liberty Mutual was obligated to establish a right to subrogation for medical expenses at the time of the hearing before the WCJ or the Board. *Indus. Recision Servs. v. Workers' Comp. Appeal Bd. (Farbo),* 808 A.2d 994, 998–99 (Pa.Cmwlth.2002); *Baierl Chevrolet v. Workmen's Comp. Appeal Bd. (Schubert),* 149 Pa.Cmwlth. 367, 372, 613 A.2d 132, 134 (1992). Liberty Mutual, however, did not file its complaint in common pleas court seeking reimbursement for medical benefits until March 2012, one year after Excalibur and Lamm entered into a March 2011 compromise and release agreement in the workers' compensation arena. Accordingly, not only did Liberty Mutual seek reimbursement in the wrong forum, but it waited too long to do so.

◼ It is well established that, "subrogation under the second paragraph of Section 319 is not self-executing and must be asserted with reasonable diligence." *Frankford Hosp.,* 820 A.2d at 872. In the present case, such reasonable dili-

5. On that form, Lamm indicated a pending workers' compensation claim. Liberty Mutual, however, objects to common pleas' use of that form because it was not included in the complaint. Because Liberty Mutual in its complaint admitted its contemporaneous knowledge of the workers' compensation claim by virtue of its averment that it paid Lamm medical benefits in response to Excalibur's July 2010 denial of her workers' compensation claim, common pleas' reliance on

Exhibit G in the nature of a "speaking demurrer" was harmless error.

6. The scope of our review of common pleas' order sustaining a preliminary objection in the nature of a demurrer is limited to determining whether it committed an error of law. *Altoona Housing Auth.,* 785 A.2d at 1049 n. 3. Over such questions, we exercise a plenary review standard.

gence is noticeably absent. In that regard, Liberty Mutual acknowledged in its complaint actual notice of both Lamm's workers' compensation claim and Excalibur's initial denial. Specifically, Liberty Mutual admitted that, at the time of Lamm's work-related accident, she was in the course and scope of her employment with Employer and the workers' compensation policy issued by Excalibur was in full force and effect. Complaint, ¶¶ 4–6. Further, Liberty Mutual averred that Lamm filed a workers' compensation claim with Appellees for injuries sustained in that accident and that Excalibur denied that claim on July 15, 2010. *Id.,* ¶¶ 7 and 8. Finally, Liberty Mutual averred that it paid Lamm medical benefits *in response to Excalibur's denial. Id.,* ¶ 8. Liberty Mutual, therefore, admittedly was contemporaneously aware of the workers' compensation action. Accordingly, Liberty Mutual did not exercise reasonable diligence in seeking reimbursement in any forum.

In addition, notwithstanding the fact that Liberty Mutual, as Lamm's automobile insurer, had actual notice of her workers' compensation claim, actual notice is not required. Insurance companies frequently deal with coordination of benefits. In that vein, absent some kind of fraudulent concealment, it was incumbent upon an insurer such as Liberty Mutual to exercise reasonable diligence in order to ascertain both the existence of workers' compensation proceedings and their ongoing status. *See Frankford Hosp.,* 820 A.2d at 872. The fact that Lamm's workers' compensation claim resulted in a compromise and release is irrelevant. Such a possibility is part and parcel of such proceedings.

■ Notwithstanding the plain language of Section 319 of the Act and the case law interpreting it, Liberty Mutual argues that an automobile carrier's right of recovery of first-party medical benefits from a workers' compensation carrier should occur in a court of common pleas and not in a workers' compensation proceeding. To that end, Liberty Mutual maintains that common pleas erroneously treated its complaint as a subrogation action, as opposed to an action for reimbursement and/or for contribution and indemnity. Specifically, it contends that Section 1719 of the MVFRL, providing for the primacy of workers' compensation benefits, is not a subrogation statute, but rather a cost-shifting statute shifting responsibility for payment of medical benefits from the automobile insurer to the workers' compensation carrier. Even if this characterization of the MVFRL is accurate, as discussed more fully below, the nature of the action brought here was a claim for subrogation. Nonetheless, Liberty Mutual argues that common pleas should have focused on the averment that Excalibur denied Lamm's workers' compensation claim, thereby triggering her application to Liberty Mutual pursuant to her personal automobile policy.[7] Accordingly, it argues that it was not required to seek reimbursement during the pendency of Lamm's workers' compen-

---

**7.** Liberty Mutual has attached as appendix C to its appellate brief Excalibur's purported notice of workers' compensation denial. In that notice, Excalibur indicated that Lamm did not suffer a work-related injury and that she failed to give notice of her injury within 120 days as required under the Act. Excalibur's notice of denial, however, was not part of Liberty Mutual's complaint. This Court may not consider appendices attached to a party's brief that are not part of the record. *Croft v. Unemployment Comp. Bd. of Review,* 662 A.2d 24, 28 (Pa.Cmwlth.1995). Although consideration of this exhibit would not alter the result here, in light of the fact that Liberty Mutual averred in its complaint only that Excalibur had denied Lamm's workers' compensation claim on July 15, 2010, only the fact of the denial and the date that it was rendered may be considered.

sation proceedings. In support, it cites *Kaiser v. Old Republic Insurance Co.*, 741 A.2d 748 (Pa.Super.1999) and *Myers v. Commercial Assurance Cos.*, 506 Pa. 492, 485 A.2d 1113 (1984).

In *Old Republic*, the Medical Professional Liability Catastrophe Loss Fund (CAT Fund),[8] after learning of a subsequent workers' compensation claim, filed a complaint in common pleas court seeking to recover medical bill payments that it had paid to the medical providers of an injured employee in excess of her primary automobile policy limits. At the time that it made the payments, the Fund was unaware that the employee's injury was work-related or that she subsequently had filed a workers' compensation claim. The employer's workers' compensation carrier, Old Republic, filed preliminary objections, alleging that the Fund's claims were barred by Section 303(b) of the Act,[9] the exclusivity provision, and Section 319 of the Act, the subrogation provision, because it failed either to properly preserve a claim by a contract with Old Republic or to raise a claim in the workers' compensation forum. The Superior Court determined that common pleas had jurisdiction, concluding that neither Section 303(b) nor Section 319 of the Act was applicable because the Fund was neither an employer nor an insurance company. Accordingly, because the case involved only the equitable subsidiarity of statutorily imposed obligations, the Court ruled that the Fund was entitled to equitable subrogation.

In *Myers*, an Illinois driver (Myers) with an Illinois employer was involved in a work-related car accident in Pennsylvania. The automobile insurer for the other driver involved paid Myers for his medical expenses and a settlement for non-economic losses pursuant to the now-repealed Pennsylvania No-fault Motor Vehicle Insurance Act (No-fault Act).[10] Myers also filed a workers' compensation claim in Illinois, which the Illinois workers' compensation carrier contested because the third party's automobile insurer had already paid his medical benefits. Ultimately, the Industrial Commission of Illinois awarded Myers medical benefits and $120 per week for life. Myers did not receive medical benefits from the workers' compensation carrier from the date of the accident to the date of the award, due to the carrier's position that the automobile insurer had already paid those expenses. Subsequently, Myers filed a declaratory judgment action in common pleas court, seeking an adjudication of the rights and duties of the various parties, including the workers' compensation carrier's claim for subrogation of the benefits that it paid, from Myer's settlement for non-economic loss that he received from the automobile insurer. The automobile insurer filed a separate equity action for reimbursement of the medical benefits that it paid and common pleas consolidated the actions. Upon review, our Supreme Court determined that, under Pennsylvania law, the automobile insurer was entitled to be reimbursed for the benefits that it was mandated to pay promptly[11] and for which the workers'

8. The CAT Fund was established pursuant to the former Health Care Services Malpractice Act, Act of October 15, 1975, P.L. 390, *as amended*, 40 P.S. §§ 1301.101–1301.1004. That act was repealed and replaced by the Medical Care Availability and Reduction of Error Act, Act of March 20, 2002, P.L. 154, *as amended*, 40 P.S. §§ 1303.101–1303.910.

9. 77 P.S. § 481(b).

10. Act of July 19, 1974, P.L. 489, *formerly*, 40 P.S. §§ 1009.101–1009.701, repealed by the MVFRL, 75 Pa.C.S. §§ 1701–1798.

11. In pertinent part, Section 106(a)(2) of the No-fault Act provided that claimed benefits would be considered "overdue if not paid within thirty days after the receipt by the obligor of each submission of reasonable

compensation carrier was ultimately liable.[12] Like common pleas, we find these cases to be distinguishable.

As an initial matter, *Old Republic* involved the CAT Fund, which is neither an employer nor an insurance company entitled to seek subrogation under Section 319 of the Act. In addition, the Court in *Myers* did not address the issue of where a claim for reimbursement must be raised or the issue of exhaustion of a statutory remedy. Myers' workers' compensation claim was resolved by the Industrial Commission of Illinois under Illinois law, so Section 319 was not involved. The Court considered only whether the Pennsylvania no-fault carrier was entitled to be reimbursed by the Illinois workers' compensation carrier for medical benefits that the no-fault carrier was compelled to pay under the now-repealed No-fault Act. Finally, we reiterate that Liberty Mutual in the present case acknowledged its awareness of Lamm's workers' compensation claim. Accordingly, Liberty Mutual's reliance on *Old Republic* and *Myers* is misplaced.

Moreover, we find Liberty Mutual's objection to common pleas' characterization of its reimbursement request as a subrogation action to be somewhat disingenuous. As the Court noted in *Old Republic,* Section 319 of the Act "applies, by its plain language, to situations where 'an employer or an *insurance company'* pays an injured worker's medical expenses and then seeks subrogation." *Old Republic,* 741 A.2d at 754 (emphasis added). Those are the facts of the present case. The *Old Republic* Court also noted that, "any variance between the two terms [subrogation and reimbursement] is purely semantic and that the terms present a distinction without a difference." *Id.* n. 6.

As Excalibur asserts, Section 1719 of the MVFRL and Section 319 of the Act, which relate to the same persons or things or to the same class of persons or things, must be read *in pari materia.* Section 1932 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1932. In turn, as Liberty Mutual asserts, Section 1719 of the MVFRL provides that, when there is workers' compensation coverage it is primary over automobile insurance benefits. It deals only with the insurers' substantive rights and obligations, while Section 319 deals in addition with the procedure for asserting those rights. All Liberty Mutual had to do here was to determine the applicability of workers' compensation insurance. Once determined, Liberty Mutual as the insurance company that paid medical benefits pursuant to a non-workers' compensation program was obligated under Section 319 to assert its subrogation interest "at the time of the hearing before the [WCJ] or the board." [13] We, therefore, reject Liber-

---

proof of the fact and amount of loss sustained. . . ." Former 40 P.S. § 1009.106(a)(2).

**12.** Section 106(a)(3) of the No-fault Act provided as follows:

(3) A claim for no-fault benefits shall be paid without deduction for the benefits or advantages which are to be subtracted from loss in calculating net loss if such benefits or advantages have not been paid or provided to such claimant prior to the date the no-fault benefits are overdue or the no-fault benefits claim is paid. *The obligor is thereupon entitled to recover reimbursement from the person obligated to pay or provide such benefits or advantages or from the claimant who actually receives them.*

Former 40 P.S. § 1009.106(a)(3) (Emphasis added).

**13.** In *Frankford Hospital,* 820 A.2d at 872, this Court cited *Baierl Chevrolet v. Workmen's Compensation Appeal Board (Schubert),* 149 Pa.Cmwlth. 367, 613 A.2d 132 (1992), as controlling on the issue of the timeliness of raising subrogation interests. In *Baierl,* this Court held that the timeliness provision in the second paragraph of Section 319 meant "that a subrogation claim must be asserted during

ty Mutual's argument that common pleas confused the concepts of subrogation, contribution and indemnity by treating Liberty Mutual's claim for reimbursement as a request for subrogation. Liberty Mutual's common law counts for contribution and indemnity were merely creative attempts to bypass the clear, mandatory language of Section 319.

Accordingly, we affirm.

## ORDER

AND NOW, this 8th day of November 2013, the order of the Court of Common Pleas of Luzerne County is hereby AFFIRMED.

the pendency of a workmen's compensation proceeding." *Id.* at 372, 613 A.2d at 134.