# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sandy Coogan,                 :
            Petitioner       :
                           :
        v.                   :    No. 1073 C.D. 2022
                           :
James D. Morrisey, Inc. (Workers'    :
Compensation Appeal Board),       :
                 Respondent   :    Submitted: August 8, 2025

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE MATTHEW S. WOLF, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE WOLF                                       FILED: April 8, 2026

Sandy Coogan (Claimant) petitions this Court for review of the September 9, 2022 order of the Workers' Compensation Appeal Board (Board), which affirmed in full a decision by workers' compensation judge (WCJ) Denise Krass granting Claimant's petition for wage loss benefits (Fatal Claim Petition) following the death of her husband, Brian (Decedent). Claimant maintains that WCJ Krass committed reversible error by failing to order James D. Morrisey, Inc., (Employer) to reimburse the Teamsters' Health and Welfare Fund (Teamsters) for Decedent's medical expenses. Because the issue of reimbursement was not properly raised before WCJ Krass, we affirm the Board.

## I. Background

The instant dispute originated with the filing of the Fatal Claim Petition on April 3, 2020. *See* Certified Record (C.R.), Item No. 2. Therein, Claimant alleged that Decedent suffered a heart attack at work on the morning of September 10, 2019, and remained hospitalized until his death on November 23, 2019. *Id.* Claimant argued that she and Decedent's two children were entitled to weekly wage loss benefits as well as funeral and burial costs. *Id.*

In support of the Fatal Claim Petition, Claimant testified at a deposition and at a March 24, 2020 hearing before WCJ Krass. Claimant explained that Decedent was a truck operator for Employer, a paving contractor, and that in the days leading up to his heart attack, Decedent was working unusually long hours to complete a project at the Northeast Philadelphia Airport. C.R., Item No. 17 (Claimant Dep.) at 11-12. On his last full day of work, for example, Decedent worked a 13-and-a-half-hour day, leaving him sounding unusually "frazzled." *Id.* at 12. In addition, Decedent endured increasing hostility from Jason Lindsay, his supervisor, who had a habit of screaming at Decedent about mistakes made by other workers. *Id.* At approximately 7:30 a.m. on the morning of September 10, 2019, Decedent telephoned Claimant to let her know that he had suffered a heart attack at work and was taken to Jefferson Torresdale Hospital in Philadelphia. *Id.*, Item No. 16 (3/24/2021 Hr'g Tr.) at 32. Decedent never returned home; after a series of unsuccessful operations, he passed away on the morning of November 23, 2019, surrounded by his family. Claimant Dep. at 18. Decedent's medical expenses and other benefits were covered by the Teamsters, as Decedent had just joined a Teamsters local several months before his heart attack. 3/24/2021 Hr'g Tr. at 45.

2

In addition to her own testimony, Claimant presented the deposition testimony of Richard Marietta, one of Decedent's former coworkers, as well as that of Dr. Vincent Figueredo, an expert in cardiovascular medicine. Mr. Marietta corroborated Claimant's allegation that Decedent was overworked in his final days and had sustained consistent verbal abuse from Mr. Lindsay, and Mr. Marietta further noted that he retired several months after Decedent's death because he "just couldn't deal with the stress and aggravation anymore." C.R., Item No. 18, Marietta Dep. at 19. Dr. Figueredo testified that Decedent's working conditions were a substantial contributing factor to his illness and death. C.R., Item No. 19, Figueredo Dep. at 19-20. While acknowledging that Decedent had an underlying coronary artery disease at the time of his heart attack, Dr. Figueredo maintained that stress and negative emotions produced by Decedent's work schedule were a "trigger" for a cardiac event such as the one he endured on September 10, 2019. *Id.* at 23.

In its defense, Employer presented the deposition testimony of Dr. Steven J. Nierenberg, who prepared a detailed report on the causes of Decedent's death, as well as the hearing testimony of Mr. Lindsay and of James Furey, another coworker. Following his review of the relevant medical records, Dr. Nierenberg opined that Decedent's heart attack was not work-related but a consequence of such conditions as Decedent's 30-year smoking habit, his moderate obesity, and his remote history of drug use. C.R., Item No. 34, Nierenberg Dep. at 28-29. Mr. Lindsay disputed the allegation that he was hostile or verbally abusive toward Decedent, while Mr. Furey asserted that Decedent's work environment was not as stress-inducing as Claimant alleged. *See generally* C.R., Item No. 15, 1/27/2021 Hr'g Tr. at 11-55, 73-91.

In a November 8, 2021 decision, WCJ Krass found as fact that Decedent suffered "an acute negative emotional trigger" after arguing with his supervisor,

"which was a significant contributing factor to his acute myocardial infarction suffered on September 10, 2019 and ultimate death on November 23, 2019." C.R., Item No. 6, WCJ Decision, Finding of Fact (F.F.) No. 19(h). Accordingly, WCJ Krass awarded compensation in the amount of $978.77 weekly to Claimant, which was to be divided evenly with Decedent's two children. *Id.*, Conclusion of Law No. 3. WCJ Krass also awarded litigation costs to Claimant, but declined to award burial costs due to the fact that Claimant had not provided evidence of those costs. *Id.*, F.F. No. 19(k)-(l).

Employer appealed to the Board, contending that WCJ Krass's factual findings were not supported by substantial evidence and maintaining that Decedent's illness and death were not work-related. *See* C.R., Item No. 7. Claimant filed a cross appeal, in which she argued that WCJ Krass committed error by failing to conclude that Decedent's medical care was reasonable and necessary and by failing to hold Employer liable for said care. *See* C.R., Item No. 9. The Board affirmed in full, holding that WCJ Krass's findings were well supported by the record. C.R., Item No. 11. As for Claimant's argument, the Board noted that Claimant failed to present evidence of medical expenses before WCJ Krass. *Id.* at 21 (citing *Inglis House v. Workmen's Comp. Appeal Bd. (Reedy)*, 634 A.2d 592 (Pa. 1993)). This appeal followed.[1]

## II. Issues

Claimant maintains that reimbursement for Decedent's medical bills is due from Employer because "[t]he obligation to pay . . . medical bills arises

---

[1] This Court's review of Board decisions is limited to determining whether the necessary findings of fact were supported by substantial evidence, constitutional rights were violated, or errors of law were committed. *Borough of Heidelberg v. Workers' Comp. Appeal Bd. (Selva)*, 928 A.2d 1006, 1009 (Pa. 2007).

4

automatically when a [c]laim [p]etition is granted and becomes absolute if the employer does not seek utilization review [UR] of the bills." Claimant's Br. at 9. "[E]ven if the subrogation claim is not of record," Claimant further argues, Employer "is required to pay for all medical care related to the work injury, regardless of who may have paid for it prior to the ruling on the [c]laim [p]etition." *Id.* at 15.

### III. Discussion

The concept of subrogation is based on the principle that one "who has paid an obligation in which another should have paid" shall be "indemnified by the other." *City of Phila. v. Deloatch (Workers' Comp. Appeal Bd.)*, 329 A.3d 707, 713 (Pa. Cmwlth. 2024) (quoting *Holgate v. Workmen's Comp. Appeal Bd. (City of Phila.)*, 521 A.2d 82, 84 (Pa. Cmwlth. 1987)). In other words, "the insurer stands in the shoes of the insured who, in [workers' compensation] matters, is the injured employee." *Id.* The subrogee's right to recovery is expressly set forth in Section 319 of the Workers' Compensation Act (Act)[2] which provides that

> [w]here an employe has received payments for the disability or medical expense resulting from an injury in the course of his employment paid by the employer or an insurance company on the basis that the injury and disability were not compensable under this act in the event of an agreement or award for that injury the employer or insurance company who made the payments shall be subrogated out of the agreement or award to the amount so paid, if the right to subrogation is agreed to by the parties or is established at the time of hearing before the [WCJ] or the board.

77 P.S. § 671 (footnote omitted). This Court has consistently interpreted Section 319 to mean that the right to subrogation must be either agreed to by the parties or established by the subrogee, specifically, during the proceedings on the underlying claim petition. *See Baierl Chevrolet v. Workmen's Comp. Appeal Bd. (Schubert)*,

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 671.

613 A.2d 132, 136 (Pa. Cmwlth. 1992) (holding that "[t]here is no provision in Section 319 which permits the injured employee who entered into a notice of compensation payable . . . to bring a separate proceeding against the employer to enforce a subrogation right of an insurance company"); *Indus. Recision Servs. v. Workers' Comp. Appeal Bd. (Farbo)*, 808 A.2d 994, 999 (Pa. Cmwlth. 2002) (holding that insurer's "right to subrogation was raised and established during the original claim proceedings" and that insurer had thus "preserved [its] lien").

Instantly, Claimant maintains that reimbursement is due from Employer because the Teamsters had covered Decedent's medical expenses in the months preceding his death. Claimant argues that the Board erred in its rejection of her claim by relying on *Inglis House*, in which our Supreme Court ruled that, "in a claim proceeding, the employee bears the burden of establishing a right to compensation and of proving all necessary elements to support an award." 634 A.2d at 595. Subsequent to the events in the *Inglis House* decision, Claimant explains, the General Assembly "overhauled the manner in which employers pay for medical care for injured employees under the [Act]" through the passage of Act 44.[3] Claimant's Br. at 10. Specifically, Act 44 amended the Act to require payment from employers within 30 days of their receipt and placed the burden on employers to contest the reasonableness and necessity of the care in question through the UR process. As a result, Claimant argues, WCJ Krass "erred by failing to conclude that all medical bills for treatment rendered for the injury and death determined to be work-related must be paid within 30 days of presentation unless [E]mployer files a UR." Claimant's Br. at 14.

---

[3] Act of July 2, 1993, P.L. 190, No. 44.

We are not persuaded by Claimant's arguments. Whatever impact Act 44 may have had on the employer's burden of proof when disputing reasonableness or necessity of treatment, it did nothing to relieve the responsibility of a subrogee to assert its subrogation interest "at the time of the hearing before the [WCJ.]" 77 P.S. § 671. In this instance, the Teamsters, as subrogee, bore the responsibility to seek reimbursement from Employer for medical expenses. While Section 319 permits the insurer to "stand in the shoes of the insured," *Deloatch*, 329 A.3d at 713, it does not permit the insured to stand in the shoes of the insurer, as Claimant purports to do here. *See also Baierl Chevrolet*, 613 A.2d at 136 (rejecting subrogation claim where insurer, "in the record before us, did not join or appear in the proceeding either before [the WCJ] or before the Board, nor is it a party to the proceeding before us"); *Liberty Mut. Ins. Co. v. Excalibur Mgmt. Servs.*, 81 A.3d 1024, 1027-28 (Pa. Cmwlth. 2013) (en banc) (affirming dismissal of civil action claim brought by insurer seeking reimbursement of medical expenses where "there is no dispute that the parties did not enter into a contract," and where insurer's "reasonable diligence" in asserting its right to subrogation "at the time of the hearing before the WCJ or the Board" was "noticeably absent").

Lastly, Claimant argues that WCJ Krass erred by disallowing evidence of the Teamsters' subrogation lien. Without citation to the record, Claimant contends that her counsel attempted to present such evidence to WCJ Krass "but was not permitted to do so."[4] Claimant's Br. at 15. To correct this alleged error, Claimant requests that this matter be remanded to a WCJ for a new hearing.

Claimant's argument is, again, unavailing. Assuming Claimant's counsel tried to introduce evidence of the Teamsters' purported subrogation interest, such an

---

[4] The Court's independent review of the record could not verify that this occurred.

7

effort is still insufficient to assert that interest.  Under Section 319 and this Court's holdings in *Baierl*, *Industrial Recision Services*, and *Liberty Mutual*, the subrogor employee cannot seek subrogation on an insurer's behalf.

### IV.  Conclusion

For the foregoing reasons, we affirm the Board.

 

_____
MATTHEW S. WOLF, Judge

 

Judge Fizzano Cannon did not participate in the decision in this matter.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sandy Coogan,                          :
                    Petitioner         :
                                       :
          v.                           :     No.  1073 C.D. 2022
                                       :
James D. Morrisey, Inc. (Workers'      :
Compensation Appeal Board),            :
                    Respondent         :

# **O R D E R**

AND NOW, this 8th day of April 2026, the order of the Workers' Compensation Appeal Board in the above-captioned matter, dated September 9, 2022, is hereby AFFIRMED.

_____
MATTHEW S. WOLF, Judge